# NEW YORK SUPERIOR COURT.

WILLIAM S. WOODS and others, respondents agt. LOUIS F. DE FIGANIERE, president, &c., appellant.

An *order* for the *discovery of books and papers* is one affecting a substantial right, and is *appealable*.

Where, on an application for an order for the discovery of books and papers, the entries sought for are not shown to be *evidence*, but only to contain information by which evidence may be obtained, the order cannot be granted.

The power of discovering the contents of a written document will hardly be stretched to cover those which only furnish information to enable the applicant to *ferret out evidence or witnesses ;* or where it is *not shown* that *witnesses cannot establish the same facts without the aid of such entries.*

If such an application is to be governed by the provisions of the *Revised Statutes*, the *denial* by the adverse party of *all possession or control* of the writings sought is a *full answer.*

Under the power of courts at *common law* to compel the production of writings in actions therein, the exercise of such power was confined to those which were the *foundation of the action*—not including those containing matters of evidence only.

Woods agt. De Figaniere.

The *Code*, although it enlarges the mode of enforcing discovery of writings by excluding them from evidence or punishing the recusant possessor, and the exercise of the power of enforcing it from cases recognized in a court of equity alone to those embraced within a general discretion, *limits the character of the writings* to be produced, to those which "*contain evidence relating to the merits.*" The Revised Statutes embraced all writings which in any way *related to such merits*, whether evidence or not. But this general expression had been relieved by confining the exercise of the power to cases sanctioned by courts of equity previously.

Therefore, in cases where the writings or entries sought are *not shown* to be capable of being used as evidence at all, they do not come within the class of writings defined by the Code.

One rule always adopted in enforcing the production of writings is, that it must appear that they are *indispensably necessary*, and not simply that such provision is a prudent precautionary measure.

The readiness of parties to believe that an examination of their adversary's books and papers will furnish evidence in their favor, requires to be curbed by courts, so as not to allow it to become *inquisitorial, or a general right of search*.

*Heard General Term, July,* 1863 ; *decided October* 3, 1863. *Before* ROBERTSON *and* MONELL, *JJ.*

THE order appealed from in this case required the defendant to give or allow the plaintiffs to take copies of entries in a book alleged to be under his control, and in case of refusal precluded him from making certain defences or controverting certain facts alleged in the complaint.

The action was brought against the defendant as president of a joint stock association consisting of more than seven persons. The existence of such association, his presidency thereof, and the names of the members, were alleged in the complaint and controverted in the answer; which were the facts which the defendant was precluded from controverting by the order in question.

The book, copies of entries in which were required to be furnished, was alleged to have contained minutes of the transactions of some persons whose names were unknown, at meetings held by them; among which were included the election of a board of managers, and the appointment, by the latter, of the defendant as president.

The application was based upon a petition of the plain-

tiffs, setting forth certain disclosures made by the defend-
ant on his examination as a witness for them previous to
the trial. By them it appeared that he had admitted
that in November, 1858, he had agreed with others to
form an association of the same name as that of which
the defendant was sued in this action as president. He
also produced a prospectus for the formation of a com-
pany of that name, signed by himself and others, contain-
ing the object, capital, and other terms of its creation.
Upon being asked whether he had any other written
papers besides such prospectus, signed to his knowledge
by any one, relative to the organization, formation or
operation of such company, he answered that he had
delivered other papers to his counsel, but could not tell
whether they related to the formation of the company or
its operation, or not, or whether any one, or who, signed
them. He further admitted, upon such examination, that
in 1859 he was appointed the president of an association
of the same name as that whereof he is sued as president
in this action; also, that a number of persons were pre-
sent at the meeting at which he was so appointed; and
that minutes of that and other meetings, showing who
were present at them, were kept in writing in a book
which 'he had delivered to his counsel, in whose posses-
sion he believed it still to be. But he also stated that
*he could not recollect anything definite of the contents of such
papers or book,* or the persons therein specified as members,
or who attended the meetings therein specified. He also
gave the name of one manager of such company positively,
and of others qualifiedly.

From a statement contained in such petition it ap-
peared that the defendant had given the names of all the
parties mentioned in the complaint as such members of
such association, in a complaint in an action brought by
him as president thereof against third persons, and had
alleged therein that he had entered into such association

in April, 1859, with such other persons. Being asked, on his examination, from whom or where he got the information that such persons were such associates in such company, he answered, *he could not recollect ;* in some cases from the parties, although he could not tell which.

Such petition also set forth that an application to compel such defendant to produce such book, made in the progress of his examination, had been denied by the justice before whom the same was conducted. The plaintiffs also averred in such petition their belief that the minute book demanded contained material, necessary and impoi tant evidence on the trial of the issues in this action, relative to the company, its members, and the defendant's official position therein. But such belief was only alleged to be founded on the other facts stated therein.

The defendant denied under oath absolutely all possession or control by him, jointly with any other person or separately, of the books and papers demanded at the time of the service of the petition.

The order was made on such petition, affidavit of the defendant and the pleadings.

D. M. PORTER, *for appellant.*

A. R. DYETT, *for respondents.*

ROBERTSON, Justice. In order to maintain this action against the defendant, as the representative in it of the company sued, it is only necessary, under the statute authorizing such mode of bringing suits, for the plaintiffs to establish that the company consisted of the requisite number of members, and that he was president. (3 *R. S.,* 5*th ed.,* 777, 778, 779.) The question of the liability of individual members as partners is not in issue, as only the property held by them jointly as an association can be taken in execution upon a judgment therein, and therefore their names are immaterial. Their individual liability

as members may be the subject of a subsequent action, in which, of course, their names would be essential. But had it even been necessary to prove the names of the members, the defendant appears to have furnished them by the sworn complaint in the action brought by him and the prospectus produced by him. In reference to the existence of the company sued in the defendant's name as its president, he had admitted the existence of one bearing the same name, organized for certain purposes. If not for the same purposes, or consisting of seven persons, the plaintiffs have not attempted to ascertain either fact from the defendant on the stand; nor do they allege or attempt to show that the book entries in question belonged not to such company, but to that sued in this action, if there were two of the same name; and moreover, they do not even allege that there were two. In the absence of any evidence of distinction, the presumption would be that they were the same. The papers before us, therefore, do not prove the indispensable necessity of inspecting such book or having proof of the entries in it, to establish anything important to be proved on the trial. It is not pretended that the defendant would have the audacity to attempt to disprove his own statements. (*Leggett* agt. *Postley*, 2 *Paige R.*, 599.)

Another difficulty with which the plaintiffs have to contend is, that the entries sought for are not shown to be *evidence*, but only to contain information by which evidence may be obtained. It is not alleged that they were in the defendant's handwriting, or that he was in any way privy to them. Possibly by inspection the plaintiffs may discover in whose handwriting they are, and obtain their author as a witness to prove the facts contained in them. But even in such case he must be proved to have no independent memory of such facts. (*Russell* agt. *The Hudson River Railroad Co.*, 17 *N. Y. R.*, 134.) I apprehend the power of discovering the contents of a written docu-

ment will hardly be stretched to cover those which only furnish information to enable the applicant to ferret out evidence or witnesses, or where it is not shown that witnesses cannot establish the same facts without the aid of such entries. (*Gelston* agt. *Hoyt*, 1 *J. Ch. R.*, 543.)

The necessity, too, of invoking the extraordinary power of the court in compelling the production of these entries, by a separate application, which takes the place of a former bill of discovery, (*Code*, §§ 388, 389,) is not manifest. Neither the defendant nor the association is an artificial person, whose officers cannot be compelled by a *subpœna duces tecum* to produce writings belonging to it in their physical custody. (*Brevoort* agt. *Warner*, 8 *How. R.*, 321; *Van Zandt* agt. *Cobb*, 12 *How. R.*, 544; *Commercial Bank of Albany* agt. *Dunham*, 13 *How. R.*, 541.) Whether the possession by counsel can protect them is another question; their production by him could probably be equally compelled on a subpœna as on such an application. (*The People, &c.*, agt. *Vail*, 2 *Cow. R.*, 683; 1 *Cow. R.*, 589.)

If this be an application to be governed by the provisions of the Revised Statutes, the denial by the defendant of all possession or control of the writing sought is a full answer. (2 *R. S.*, 197, § 24; *Bradstock* agt. *Bailey*, 4 *Abb. P. R.*, 233; *Ahoyke* agt. *Walcott, id.*, 41; *Hoyt* agt. *Am. Ex. Bank*, 1 *Duer R.*, 652; *S. C.*, 8 *How. R.*, 89.) The supposed admission by the failure to controvert the allegation of a delivery to counsel, cannot be employed to counterprove such denial. Formerly, on a bill of discovery in a court of equity, merely in aid of an action at law and a denial in the answer, no issue could be raised or tried of possession. (2 *Barb. Ch. R.*, 106, 111, 115; *King* agt. *Clark*, 3 *Paige R.*, 76.) The mere fact of being able to prove such possession would do away with the necessity of discovery; it was only an appeal to the party's conscience, and the defendant was the plaintiffs' witness.

Such a discovery also was not permitted in equity merely to enable a party to prepare for a trial or prevent surprise ; it must furnish evidence to be used on the trial. (*Seymour* agt. *Seymour*, 4 *J. Ch. R.*, 409 ; *Leggett* agt. *Postley*, 2 *Paige R.*, 599 ; *March* agt. *Davison*, 9 *id.*, 580 ; *Bailey* agt. *Dean*, 5 *Barb. R.*, 297.) There was no distinction between the discovery of facts known to the defendant and writings in his possession. The Revised Statutes restrict the cases in which and the proceedings by which courts may enforce discovery of writings· to those governing courts of equity before their passage. (2 *R. S.*, 197, § 22.) The denial of possession in this case in a court of equity, and of course under the Revised Statutes, is therefore not a subject of controversy.

The order made in this case is not sustainable under the power of courts at common law to compel the production of writings in actions therein. The exercise of such power was confined to those which were the foundation of the action, so that even those which were evidentiary only were excluded from the benefit of it. *Willis* agt. *Bailey*, (19 *J. R.*, 269 ;) *Bank of Utica* agt. *Hillard*, (6 *Cow. R.*, 62 ;) on policies of insurance, (11 *J. R.*, 246, *n.*;) and alleged forgeries, (2 *M. & G. R.*, 758 ; 3 *Cow. R.*, 17, *and* 18 *n.*,) formed exceptions. It could not be exercised for inequitable purposes, or to create or promote litigation. (2 *J. Ch. R.*, 150 ; 3 *id.*, 467 ; 4 *Paige R.*, 639 ; 5 *Barb. R.*, 297 ; 2 *Cow. R.*, 592.) The utmost that could be said of the writings sought in this case was that they might furnish evidence ; clearly they were not the foundation of the action.

The order in question, if sustainable at all, can only be so under the Code. And here we are met with the difficulty, that the penalty imposed by it for non-compliance with it is not authorized by the Code. That confines the consequences of a refusal to furnish the contents of a document to its exclusion as evidence, or the punish-

ment of the party refusing, or both. It would not, perhaps, be admissible to inquire on appeal into the propriety of depriving all the association of a defence in consequence of the contumacy of a member; the object of the Code may have been to confine the punishment to the actual offender instead of implicating the innocent, which the Revised Statutes allowed as the only means of coercion. That part of the order would necessarily require reformation, if it be sustainable under the Code and under that alone.

The Code, although it enlarges the mode of enforcing discovery of writings by excluding them from evidence or punishing the recusant possessor, and the exercise of the power of enforcing it from cases recognized in a court of equity alone to those embraced within a general discretion, limits the character of the writings to be produced to those which "contain *evidence* relating to the merits." The Revised Statutes embraced all writings which in any way *related to such merits*, whether evidence or not. The vagueness, however, of that phrase had been relieved by confining the exercise of the power to cases sanctioned by courts of equity previously, thus merely transferring the jurisdiction to common law courts. The Code, on the other hand, leaves everything but the nature of the writings to the discretion of the court. How that discretion is to be governed, or whether it is to be arbitrary, is also left to the courts to determine. In this case, the entries sought are not shown to be capable of being used as evidence at all, and therefore do not come within the class of writings defined by the Code. They are not minutes of the transactions of a corporation kept by an appropriate officer, but of several individuals, supposed members of a partnership.

But even if such entries were not defective as evidence, other objections arise to compelling their production under the Code. The discretion to be exercised by the

court cannot be intended by the Code to be an arbitrary one. (*Van Zandt* agt. *Cobb*, 12 *How. Pr. R.*, 544.) While limiting the character of the writings whose production was to be enforced, it could not have been contemplated that the exercise of the power itself should be unlimited, to be used or withheld at pleasure. The design seems to have been rather to indicate that the exercise of the power, even in regard to evidentiary writings, should not be imperative, but discretionary. If that be so, no better guides for that discretion can be found than the rules previously adopted by courts of both law and equity as to the cases to which the production of writings should be restricted.

In such a case as this, any mere allegation by the party seeking a discovery, that they believe the writings in question contain evidence, would be immaterial, (*Wilkie* agt. *Moore*, 17 *How. Pr. R.*, 480,) unless their character is so defined as to enable the court to determine that they do so. This has been the rule both in equity formerly, (*McIntyre* agt. *Mancius*, 3 *J. C. R.*, 45 ; *S. C.*, 16 *J. R.*, 592 ; *Lane* agt. *Stebbins*, 9 *Paige's R.*, 622,) and since the adoption of the Revised Statutes and the Code. (*McAlister* agt. *Pond*, 15 *How. Pr. R.*, 299 ; *Wilkie* agt. *Moore*, 17 *How. Pr. R.*, 480 ; *People* agt. *Rector of Trinity Church*, 6 *Abb. P. R.*, 177 ; *Cassard* agt. *Hinmann*, 6 *Duer's R.*, 519.)

One rule always adopted in enforcing the production of writings was, that it should appear that they were indispensably necessary, (*Gelston* agt. *Hoyt*, (1 *J. Ch. R.*, 343,) and not simply that such production was a prudent precautionary measure. (*Moore* agt. *McCredy*, 2 *Bosw. R.*, 669 ; *Commercial Bank of Albany* agt. *Dunham*, 13 *How. Pr. R.*, 541 ; *McAlister* agt. *Pond, ubi sup.* ; *Pegram* agt. *Carson*, 18 *How. R.*, 519.) In this case it appears, on the plaintiffs' own showing, that all that could be proved by such entries can be otherwise established. An ability to establish the same matters by living witnesses is not

negatived.   There is nothing before us to show that the repugnance of the law to compel a party to furnish evidence against himself ought to be overcome, in order to attain justice, by putting the parties on an equal footing as to evidence.   The readiness of parties to believe that an examination of their adversary's books and papers will furnish evidence in their favor, requires to be curbed by courts so as not to allow it to become inquisitorial or a general right of search.

In this case the entries desired are not alleged to contain any new information available in the case ; are not shown to be admissible as evidence, or, if admissible, as substituted evidence ; it is not shown there are not living witnesses to the same facts.   All it is alleged they can show is already known, and can be proved by the defendant's admissions and sworn statements.   It does not seem, therefore, to have been a case in which the production of the books in question should have been ordered.

The order affected a substantial right, and was therefore appealable under the Code, (§ 349.)

The order must be reversed ; but, as the plaintiffs may be able to show a necessity not now apparent, without prejudice to a new application, if they shall be so advised.