# REPORTS OF DECISIONS

OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

---

## CHARLESTON.

HURRICANE TELEPHONE CO. *v.* MOILLER, *et al.*

Submitted January 11, 1902. Decided March 8, 1902.

1. BILL OF DISCOVERY—*When May be Filed.*

   A bill of discovery may be filed by a party to an action at law to compel discovery in aid of the action or of the defence thereto, although by sections 22 and 23 of chapter 130 of the Code the party filing such bill may compel the other party to attend and be examined as a witness for him in relation to the same matters. (pp. 8, 9).

2. BILL OF DISCOVERY—*Appeal—Amount in Controversy.*

   An appeal lies from an order requiring an answer to such a bill when the amount involved in the action is of greater value or amount than one hundred dollars exclusive of cost, although it is not an order for the payment of money nor one directly involving freedom. (p. 6).

3. DISCOVERY—*When it Lies—Partnership.*

   Although as a general rule, a bill of discovery does not lie for the purpose of determining whom the plaintiff therein may sue at law, if the bill alleges that the defendants have been sued at law as late partners and sets out enough to show that a good cause of action has been alleged against the defendants

as such co-partners, and the defendants have filed a plea in abatement denying that the firm or company whose name is signed to the agreement sued on was, at the time said contract was made or at any time, a partnership composed of the said defendants, they may. be required to discover whether they were such partners to aid the plaintiff in maintaining his side of the issue thereby tendered (pp. 17, 18).

Appeal from Circuit Court, Kanawha County.

Bill by the Hurricane Telephone Company against Charles J. Mohler *et al.*

Decree for Plaintiff and Defendants appeal.

*Affirmed and Remanded.*

FLOURNOY, PRICE & SMITH, and R. S. SPILMAN for appellants.

PAYNE & PAYNE and A. S. ALEXANDER for appellee.

POFFENBARGER, JUDGE:

The Hurricane Telephone Company, a corporation, filed, in the circuit court of Kanawha County, what purports to be a pure bill of discovery, against J. Chas. Mohler, M. F. Mohler, William E. Mohler and Mohler Lumber Company. It alleges that the plaintiff has instituted an action at law in the same court against the same defendants as late partners under the firm name and style of the Kanawha Valley Telephone Company, for the recovery of two thousand dollars as damages for the breach of a certain contract, made between the plaintiff and the Kanawha Valley Telephone Company and fully. described in the declaration filed in the action at law; that, in said action, said defendants filed two pleas and an affidavit in which they allege that the Kanawha Valley Telephone Company, whose name is signed to the agreement set forth in the declaration, was not, at the time the agreement was made and never was, a partnership composed of the said defendants; and that, in a certain other suit pending on the law side of the same court in which the Kanawha Telephone Company is plaintiff and the Kanawha Valley Telephone Company is defendant and sued as a corporation, the said defendants filed a plea verified by the oath of W. E. Mohler, denying that it is a corporation.

The bill sets forth the nature of the plaintiff's cause of action in the law case substantially as follows: It owned and

operated a telephone line extending from Winfield in Putnam County to Hamlin in Lincoln County. The Kanawha Valley Telephone Company owned and operated a line extending from Winfield to Charleston, and the Kanawha Telephone Company, owned and operated certain lines in and about the city of Charleston. On the 3rd day of December, 1897, these three companies entered into a contract by which it was provided that the plaintiff's line and the line of the Kanawha Valley Telephone Company should be operated in connection with the Kanawha Telephone Company, the profits of the business transacted to be equally divided between plaintiff and the Kanawha Valley Telephone Company, and that plaintiff's line should be thus connected with the Kanawha Telephone Company and enjoy the privileges before that time granted to the Kanawha Valley Telephone Company by a certain contract between the Kanawha Telephone Company and the Kanawha Valley Telephone Company. By said agreement said line from Winfield to Charleston was leased to the plaintiff for a valuable consideration set forth in the contract but not mentioned in the bill. A further stipulation was that the provisions of the contract should be binding upon each of the parties for a period of ten years after the date thereof and the parties bound themselves not to enter into any agreement with the Bell Telephone Company or any other company or person which would be detrimental to any one of the parties to said agreement. Under this contract a profitable business was done until some time in September, 1898, when the Kanawha Valley Telephone Company, without fault upon the part of the plaintiff, sold out its line between Charleston and Winfield and stopped the operation of plaintiff's line over the Kanawha Valley Telephone Company's line and with the Kanawha Telephone Company's exchange at Charleston. It is alleged that the breaking of the said contract was injurious to the plaintiff and, therefore, it brought said action at law.

Other averments of the bill are, that, before said action at law was brought, the plaintiff therein endeavored to obtain from the defendant, W. E. Mohler, the names of the persons composing the firm of the Kanawha Valley Telephone Company, but he declined to give them, although he knew who composed it; that the name of said firm was signed to the contract by J. Chas. Mohler, treasurer and secretary; that plaintiff is informed and believes that W. E. Mohler was active in the man-

agement of the affairs of said company; that the Mohler Lumber Company, and M. F. Mohler are also interested and know about its affairs; that J. Chas. Mohler is the secretary and treasurer of the Mohler Lumber Company; that W. E. Mohler and M. F. Mohler are directors of the Mohler Lumber Company; that there was a corporation of the exact name adopted by the said parties who built and operated the Kanawha Valley Telephone Company's line; and that, in order that the plaintiff may properly maintain its side of the issue in said action, or that it may sue the said Kanawha Valley Telephone Company properly, it should have the discovery prayed for in the bill in reference to certain matters therein set forth.

The prayer of the bill is that the defendants be required to answer the following interrogatories: *"First*: Whether the Kanawha Valley Telephone Company, was on the 3rd day of December, 1897, a corporation or a partnership. *Second*: If a partnership, who composed said co-partnership? *Third*: When, to whom and for what consideration did said Kanawha Valley Telephone Company sell its line, extending from Charleston to Winfield? *Fourth*: What reasons it had for complaint, if any, against this plaintiff? *Fifth*: Why the said parties who constructed and operated the line from Charleston to Winfield adopted the name of a corporation which had been previously chartered by the State of West Virginia?"

The defendants, J. Chas. Mohler, M. F. Mohler and W. E. Mohler, filed a demurrer to the bill setting forth the following causes of demurrer: *"First*: That the plaintiff has not made or stated such a case as entitled it in a court of equity to the relief prayed for in said bill or any part thereof. *Second*: This Court as a court of equity has no power or jurisdiction to entertain plaintiff's bill, the object of which is to compel the defendants to furnish it the names of parties so that it may bring suit against them upon its alleged claim. Such is not the province of a bill of discovery. *Third*: That said bill is not sufficient in law nor in equity."

On the 16th day of April, 1901, the court overruled the demurrer and awarded a rule against the defendants requiring them to answer the bill not later than April 25, 1901, on pain of fine and imprisonment "stating, *first*. who composed the Kanawha Valley Telephone Company, whose name is signed to the contract set out in the bill dated on the 3rd day of December,

1897; *second,* whether said concern was on the day last mentioned a firm or a co-partnership; *third,* when the telephone line of said concern extending on the said date from the City of Charleston, West Virginia, to Winfield, Putnam County, West Virginia, was sold, and to whom." From this order an appeal was obtained upon which it is now to be determined whether said order was proper.

At the hearing it was suggested, without argument or discussion, that this order is not appealable and the question is one of some difficulty. An appeal from such an order is not expressly given by any provisions of section 1 of chapter 135 of the Code nor section 3 of article VIII of the Constitution. It is not a decree for money nor is it an order or judgment directly and immediately involving freedom, although refusal to obey the order might ultimately result in the imprisonment of the appellants. If this Court can, by way of prevention, interpose, in anticipation of that result, such proceeding would be very unusual and no precedent for it is known to exist. The constitution and the first clause of said statute provide for appellate jurisdiction in civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars wherein there is a final judgment, decree or order. This bill asks no pecuniary relief. It only seeks a discovery of facts, but that discovery is in aid of an action at law wherein the amount in controversy is two thousand dollars. This is a separate and distinct suit, it is true, but it is ancillary to the action at law and if the discovery is material to the action at law, as it must be in order to be had, then it may involve the whole matter in controversy in said action. The question has never been passed upon by this Court and the courts of the various states are not in harmony on the subject. In New York it has been held that an order for the discovery of books and papers is one affecting a substantial right and is, for that reason, appealable. *La Farge* v. *Insurance Co.,* 14 How. Pr. Rep. 26; *Wood* v. *De Figaniere,* 25 How. Pr. Rep. 522. An order for the examination, before trial, of a party to the action is appealable for the same reason. *Berdell* v. *Berdell,* 86 N. Y. 519; *Heishon* v. *Insurance Co.,* 77 N. Y. 278; *In Re Slingland,* 36 Hun. (N. Y.) 575; *Green* v. *Wood,* 6 Abb. Pr. (N. Y.) 277. An order requiring the production of books was held appealable in *Bank* v. *Able,* 88 Ky. 428. To the same effect are *Noonan* v. *Orton,* 28

Wis. 386; *State ex rel* v. *Judge,* 26 La. 57. It is not to be presumed that the legislature or the people intended that there should be no appellate jurisdiction in a class of cases so important as that to which this belongs. Mr. Fonblanque, in his Work on Equity, B. 6, ch. 3, s. 1, speaking of the importance of this branch of equity jurisdiction, says: "But as the most valuable institutions are not exempt from abuse, this power, which ought to be the instrument of justice, may be rendered the instrument of oppression. A plaintiff by his bill may without the least foundation impute to the defendant the foulest frauds, or seek a discovery of transactions in which he has no real concern; and when the defendant has put in his answer denying the frauds or disclosing transactions (the disclosure of which may materially prejudice his interest), the plaintiff may dismiss with costs, satisfied with the mischief he may have occasioned by the publicity of his charge, or with the advantage which he may have obtained by an extorted disclosure. * * * The court alone can counteract it; and in vindication of its process must feel the strongest inclination to interpose its authority." Our statute conferring appellate jurisdiction is remedial in its nature and such statutes are to be liberally construed and in so construing it in view of these principles appellate jurisdiction must be held to exist, especially when the amount in controversy in the action at law in aid of which the discovery is sought is more than one hundred dollars, exclusive of costs. This question did not arise in *Russell* v. *Dickeschied,* 24 W. Va. 61, the only case of a pure bill of discovery found in our Reports. There, an injunction was sued out upon the bill, and, without requiring an answer, the court below dissolved the injunction and dismissed the bill. The plaintiff appealed from the order dissolving the injunction, in respect to which the statute expressly gives appellate jurisdiction. Another question in this connection is whether the order appealed from is final. As to that there is no doubt. All the authorities hold that where the bill seeks no relief and is merely a bill of discovery the object of the suit is accomplished and the suit itself is ended as soon as the defendant puts in his answer. 1 Pom. Eq. Jur., s. 191; Story's Eq. Jur., s. 1483; Mit. Eq. Pl., by Jeremy, 16; Jer. Eq. Jur., 257, 258; Spens. Eq. Jur., 677, 678; Adam's Eq., 6 Ed., 20. The only order that could have been taken against the defendants here was an order to answer and

it was as clearly final as would be a decree of sale upon a bill/ filed for relief.

Bills merely for discovery are of much less frequent and extensive use now than formerly because of statutory provisions for the examinations of parties to actions at law as witnesses. Such provision exists here.   Code, chapter 130, sections 22, 23. But these provisions have not taken away the jurisdiction in equity by bill of discovery.   In *Russell* v. *Dickeschied,* cited, JUDGE WOODS thoroughly discusses that question and it is there formally and deliberately settled.   It is not denied in this case that such jurisdiction exists.

On the main question it is to be noticed that the plaintiff sets out a good cause of action against the Kanawha Valley Telephone Company.   It shows that that company has, without cause or excuse, committed a breach of a contract made between it and the plaintiff.   Furthermore, the bill shows that the plaintiff has already brought its action at law against said company for the recovery of damages for said breach of contract. From the allegations of this bill it is clear that the plaintiff is fully informed as to all the facts necessary to maintain its action at law with the single exception that it does not know what persons are liable to it for the breach of the contract.   The bill does not ask for the disclosure of any evidence as to what the terms of the contract were, from which it may be inferred that the plaintiff has all the information it needs on that subject. All it desires to know is whether the Kanawha Valley Telephone Company was a corporation or a co-partnership when the contract was made; if a co-partnership, who composed it; when, to whom and for what consideration it sold its telephone line; what reason it had for violating its contract; and why it adopted the name of a corporation chartered by the State.   It is difficult to see how any of these matters can be material to the issue to be ultimately determined between the parties.   They seem to relate almost, if not quite, exclusively to the issue tendered on the plea of a misjoinder of parties.   The matters to which the fourth and fifth interrogatories relate are clearly not material to any phase of the case.   They simply inquire for the reasons why the defendant did certain things.   The answer to the third may tend to prove the breach of the contract by showing that the Kanawha Valley Telephone Company sold its line, and disabled itself thereby from carrying out the contract.   The first

and second cannot possibly be material except in the determination of the question of proper parties. In other words, by these two interrogatories, the plaintiff, after setting out in its bill a cause of action, endeavors to find out whom it shall sue on account thereof or rather whether it has sued the right parties. It is probably still more accurate to say these two interrogatories are designed and intended to bring from the defendants the proof of the plaintiff's allegation in its declaration in the action at law that they are the parties who contracted with it and thus determine the issue on the plea of misjoinder in favor of the plaintiff.

Counsel for appellants insist that the demurrer should have been sustained and for this they rely, principally, upon two grounds: One is that while the bill may state a cause of action it shows that the plaintiff has no right of action against the parties defendant to the bill and that its sole object is to discover or ascertain the parties against whom suit is to be brought. The other is that the bill does not show such interest in the subject-matter of the action on the part of the defendants as to afford ground for a bill of discovery against them. The main contention, however, is that this is a suit, not to obtain evidence in aid of an action at law, but to find out who can properly be made defendants to that action, or whether the plaintiff, having brought its action and asserted its demand against these defendants, has brought the action and asserted the demand against the parties who are liable.

All the authorities hold that a bill of discovery will not lie against a mere witness. Nobody can be compelled to answer such a bill except a person interested. Bart. Ch. Pr. 325; *Mosley* v. *Green,* 11 Paige (N. Y.) 240; 6 Ency. Pl. & Pr. 761; *Dummer* v. *Clippenham,* 14 Ves. Jun. 245; Hare on Discovery 751; *Fenton* v. *Hughes,* 7 Ves. Jun. 287; *Yates* v. *Monroe,* 13 Ill. 212; Jer. Eq. Jur., 258; *Dineley* v. *Dineley,* 2 Atk. 394; Story. Eq. Jur. 1489; Pom. Eq. Jur., s. 199. The interest of the defendant must be clearly set out in the bill. If suit has been brought the bill must set forth its nature with certainty to a common intent so that the court may judge whether facts alleged are such as will support an action. Unless the facts set forth in the bill admitting their truth would enable the plaintiff to maintain an action he has no title to the assistance of a court of equity to obtain evidence of the truth of the case. 6.

Ency. Pl. & Pr. 766, 767.  "It is also requisite that the party
seeking discovery should show that he has a legal claim upon
.the defendant.   The court does not compel discovery for the
mere gratification of curiosity, but in aid of some other proceed-
ing.   * * *   With regard to the qualifications of the parties,
then, it seems that if the plaintiff can show a title to the sub-
ject-matter in himself, and also an interest in the defendant, and
an apparent legal right against the latter concerning it, this
court will give discovery in aid of an action at law, but not oth-
erwise."   Jer. Eq. Jur. 260, 261.   To the same effect, see Pom.
Eq. Jur. s. 198; Stor. Eq. Jur. ss. 1490, 1497.   At s. 1493*a*,
Story says:  "If it is clear that the action or the defence is un-
maintainable at law, courts of equity will not entertain a bill
for any discovery in support of it, since the discovery could not
be material, but must be useless.   This however is so delicate a
function the courts of equity will not undertake to refuse a dis-
covery upon such grounds unless the case is entirely free from
doubt.   If the point be fairly open to doubt or controversy,
courts of equity will grant the discovery and leave it to courts
of law to adjudicate upon the legal rights of the party seeking
the discovery."   Story Eq. Pl. 561, 562.   However, the bill
must not only set out a *prima facie* cause of action and allege
that suit has been brought upon it against the defendant or that
the plaintiff intends to institute such an action against him.   In
*Mayor of London* v. *Levy,* 8 Ves. Jun. 404, a case relied upon
largely by the appellants here, Lord Eldon said:   "That where
the bill avers, that an action is brought, or, where the necessary
effect in law of the case stated by the bill appears to be, that the
plaintiff has a right to bring an action, he has a right to a dis-
covery, to aid that action, so alleged to be brought, or, which he
appears to have a right and an intention to bring, cannot be dis-
puted.   But it has never yet been, nor can it be, laid down, that
you can file a bill, not venturing to state, who are the persons,
against whom the action is to be brought; not stating such cir-
cumstances as may enable the Court, which must be taken to
know the law, and therefore the liabilities of the defendants, to
judge; but stating circumstances; and averring, that you have a
right to an action against the defendants or some of them."
Looking at this bill in the light of these authorities one must
be convinced that it not only sets out good cause of action, name-
ly, a contract and the breach thereof and consequent damages,

but also sufficiently states the interest of the defendants in that cause of action; for it shows that the plaintiff has already brought its suit against them alleging that they are the parties with whom it made its contract and who have committed the breach of that contract. Viewing it in the light of the reasoning of Lord Eldon it seems to comply with the requirements laid down by him in the first part of the quotation from his opinion. In *London* v. *Levy* no action had been brought and the bill did not allege the intention of the plaintiff to bring an action against anybody in particular. It simply suggested an intention to sue the defendants or some of them.

That is very different from the situation here. The Hurricane Telephone Company has already sued all these defendants and the bill so states. It goes further than that and shows that the defendants have not only been sued but that they have tendered an issue, namely, whether they are the parties who contracted with the plaintiff and are liable for the breach. That raises a very important question in the case and one which may be as vital to the interests of the plaintiff in that suit as any other. It is in reference to that issue that the plaintiff stands in need of evidence which he does not possess and which lies wholly within the knowledge of the defendants. At s. 561 of Stor. Eq. Pl., after stating the necessity of the plaintiff's unfolding so much of his title in the action at law as is sufficient to establish that it is such as, if made out, a good foundation of the action, says: "Not, that it is necessary, that the discovery asked should be such, as to reach all the points of fact involved in the proof and support of that title; for, it seems, that a bill of discovery will lie to establish any facts in support of the action, although that discovery may not include all the facts necessary to support it." "A plaintiff, in this case, is entitled, not only to have discovery in matters which he cannot prove, but of such matters as may be of ease and relief to him in recovering his title." *Brereton* v. *Gamul,* 2 Atk. 240. In *Finch* v. *Finch,* 2 Ves. 490, Lord Hardwicke said: "Every plaintiff is entitled to have a discovery from defendants as to two heads; to enable him to obtain a decree, and to ascertain facts material to the merits of his case, either because he cannot prove, or in aid of proof; for a man may be entitled to an answer of what he can prove, to avoid expense." These last two cases were for relief as well as discovery but, as shown, the proposition there

laid down is equally true of a bill for discovery only. Upon reason it would seem that the plaintiff may restrict his prayer for discovery to any matter or part of the evidence to support his action that he may choose. It would be absurd to suppose that, if he files a bill for discovery, he must call upon the defendant for all the evidence necessary to support the plaintiff's action at law. It is reasonable and consistent to say that he may call upon the defendant for evidence as to such facts only as he may choose or as may seem to him necessary, such facts and evidence being material. These considerations are decisive of the sufficiency of the statement of the cause of action, the interest therein of the defendant and the materiality of the discovery sought. In other words the bill is sufficient and proper.

From the foregoing it is apparent that much of the argument by counsel for appellants is based upon a misconception. As has been shown the bill is not one whose purpose is to find out whom to sue. But, if it were, there are many instances in which such a bill has been sustained. Stor. Eq. Jur. s. 1483, says a bill of discovery will lie to ascertain who is the party against whom suit should be brought but that these are of rare occurrence. Pom. Eq. Jur., s. 197, says a discovery may be needed to determine the proper parties. To the same effect are Beach on Mod. Eq., s. 858; Hogg's Eq. Pr., s. 580. But there are cases which might be taken to hold that a bill of discovery cannot, under any circumstances, be filed for that purpose, and some of them have been cited for counsel for appellants. They rely upon *Opdyke* v. *Marbel and Others,* 44 Barb. (N. Y.) 64. That was a motion for a discovery of books and papers made in an action at law brought for the publication of a libel in a newspaper published in the city of New York called "The World." The petitioner showed that he did not know the names of the publishers and editors of the paper but was informed and believed that the defendants were among them and had some connection with them. He averred that the information was necessary to enable him to prepare his complaint in the action. The court held that such discovery could not be had, but this was done without referring in any way to any authority or any decided case. In *Dineley* v. *Dineley,* 2 Atk. 394, the bill was brought to establish a will and sought discovery of the defendant whether she had any son by the testator then living, and a

demurrer to the bill was sustained. Another case relied upon
is *Twells* v. *Costen*, 1 Pars. Eq. Cas. (Pa.) 373. There the
vendor of certain property filed a bill for discovery against the
purchaser who was insolvent, alleging that the purchaser in buy-
ing the property acted as an agent of an undisclosed principal and
the prayer was that the principal be disclosed and enable the
plaintiff to maintain an action against him for an alleged breach
of the contract of sale. To this bill the demurrer was sustained
and the language of a portion of the opinion is taken from the
case of *London* v. *Levy*, from which a quotation is hereinbefore
set out. These last two cases differ materially from that of
*London* v. *Levy*. They called upon the defendants for discov-
ery as to the interests of persons not made defendants to the
bill, while in *London* v. *Levy* all the parties from whom and in
respect to whom discovery was asked were all made parties to
the bill, but it was defective in that it did not state whom the
plaintiff intended to sue. All these cases are distinguishable
from the one under consideration. But, as stated before, there
are cases in which bills have been entertained for discovery in
which the sole purpose was to find out whom to sue. In *Heath-
cote* v. *Fleete*, 2 Ver. 442, the bill was filed to discover who was
the owner of a wharf and lighter to enable the plaintiff to bring
an action for the damages his goods had sustained by the
lighter's being overset by the negligence of the lighter man and
it was held good on demurrer. In *Morse* v. *Buckworth*, 2 Ver.
443, the bill was brought to discover who were part owners of a
ship on which the plaintiff's goods were burnt to enable him to
bring his action and that bill was held good on demurrer. In
*Orr* v. *Diaper*, 4 Ch. Div., decided in 1876, the plaintiffs were
manufacturers of sewing cotton and thread and the defendants
were ship owners who had carried to foreign markets thread
produced by other persons and packed in the same manner as
plaintiff's thread and bearing counterfeit tickets. The object of
the bill was to compel the ship owners to discover the names of
the persons who were thus using the plaintiff's trade mark, the
ship owners having refused to disclose their names. The bill
did not allege any intention to sue the defendants therein but
sought the names of the unknown persons who had invaded the
rights of the plaintiffs to the end that they might be sued. That
bill was held good. The Vice Chancellor said: "It has been sub-
mitted that the defendants are mere witnesses; but their posi-

tion, being the actual shippers, is different from that of mere witnesses." In *Moodalay* v. *Moreton* and the *East India Co.,* 2 Dick. 652, 1 Brown's Ch. 469, the plaintiff filed his bill against the company and its secretary showing that the company had granted the plaintiff the right to supply the inhabitants of Madras with tobacco for ten years and that before the expiration of the lease or permission the company dispossessed the plaintiff and granted the permission to other persons. The prayer was for a commission for the examination of witnesses and that the company and its secretary be required to discover by whom and under what authority the second cowl or lease was granted. The bill was held good on demurrer. In *Angel* v. *Angel,* 1 Sim. Stu. 44, Vice Chancellor Leach, in commenting on the case of *Moodalay* v. *Moreton,* said: "The object of the bill was to discover, by the examination of witnesses in the East Indies, whether the persons who had done the act complained of, had or not the authority of the East India Company for the purpose of determining whether redress was to be sought against the East India Company, or the person who had done the act individually."

In *Hoppock* v. *Railroad Co.,* 27 N. J. Eq. 286, the bill was for discovery and relief. Plaintiff's testator had a contract with a certain canal company by virtue of which he was to have certain quantities of water from the feeder of the canal for milling purposes. Afterwards the canal company was consolidated with the Camden and Amboy Railroad Company. Still later these companies were consolidated with the New Jersey Railroad and Transportation Company, all adopting the name of the United New Jersey Railroad and Canal Company. Still later the United New Jersey Railroad and Canal Company leased its railroads and canal franchises, by legislative permission, to the Pennsylvania Railroad Company. The agreement to furnish water was violated. The purpose and nature of the bill is set forth as follows in the opinion of the court: "The bill seeks relief on the ground of the inability of the complainants to obtain redress at law from want of information as to whom they should sue, and it asks discovery. I am satisfied that the complainants are entitled to the aid of the court in the premises. With a cause of action against the canal company, (and by the act of February 15, 1831, against the Camden and Amboy Railroad Company, also), they are unable to proceed

against either of them, because these companies have, both ceased to exist. The United New Jersey Railroad and Canal Company, which succeeded them, received, as a consolidation, all of the property of the consolidated companies, "subject," in the language of the act, "to all the duties and obligations" then "existing upon or made by three corporations," and "subject to all contracts, agreements and engagements" theretofore "lawfully made" by those companies or either of them. That company had parted with the possession of all the property which belonged to the consolidated companies, by leasing it, as above mentioned, to the Pennsylvania Railroad Company and delivered it over to that company, which now holds it accordingly, and according to the bill, denies its liability to answer for the breach of the covenant. The property of the covenantor (part of it, perhaps, that which entered into the consideration of the covenant,) is here in the hands of the lessees, whose lessors received it "subject to" the covenant, and the lessees claim to hold it free from obligation or liability in respect to the covenant. The lessors have no property which can be reached at law. Under the circumstances, the complainants are entitled to discovery as to the liability of the lessees in the premises. They will not be required to try experiments at law. They are entitled to know whether the lessees are not liable."

In *Post & Co.* v. *Railroad Co.,* 144 Mass. 341, the bill was for discovery only. It showed that there were two Ohio corporations, one of which had obtained judgment against the other. The officers of the debtor company resided in Massachusetts and its books and papers were there. Hence, it was impossible for the courts of Ohio to obtain jurisdiction of said officer's books and papers. The creditor company desired to enforce the personal liability of the stock holders of the other company and thus secure satisfaction of its debt, but the names and residences of the stock holders were unknown and the bill was filed in the Massachusetts court to obtain that information so that the stock holders residing in Ohio might be sued there. Field, Judge, in delivering the opinion of the court, reviewed the English and American authorities on the subject of bills of discovery and in concluding he says: "But when a plaintiff has a cause of action against persons who are defined, either by statute, or by their relations to property or to a business by the management of which the plaintiff has suffered injury, and

the names and residences of these persons are unknown to him, it is not clear that there may not be such a state of facts that a court ought to compel a discovery of the names and residences of these persons from their agents in charge of the property or business, and the decisions recognize that this may sometimes be done." The court did not base the decision upon the well settled exception that a discovery may be had from the officers of a corporation to aid a plaintiff or defendant in maintaining or defending a suit brought against or by the corporation alone, grounded upon the fact that a corporation can only answer by its agents or officers and cannot, as a corporation, commit perjury, thus making it necessary that the discovery be sought from the agents or officers and not from the corporation. The case did not fall clearly within that exception. The bill showed that it was the intention of the plaintiff not to sue the corporation but to sue the stock holders individually. Hence, the decision had to be put upon the general principles relating to discovery and it was held that the officers of the company bore such relation to the cause of action by reason of their management of the affairs of the company and had such an interest as made and rendered them liable to answer.

*Irving* v. *Thompson,* 9 Sim. 18, is cited in the brief of counsel for appellants but it clearly does not bear any relation to this case. It was a bill for discovery brought by the defendants in an action at law against the sole plaintiff in said action and another person, one Kruger, alleging that the latter was interested with the plaintiff in the demand sued for in the action at law. The court held that Kruger was a mere witness and sustained his demurrer as was done in *Fenton* v. *Hughes,* 7 Ves. 287; *Glyn* v. *Soares,* 3 Myl. & Keen, 450. The demurrants in those three cases had not sued nor evinced any intention to sue the parties who filed the bills of discovery against them. The bills set up no cause of action on the part of the plaintiffs therein against the demurrants, nor did they allege any intention on the part of the plaintiffs to sue the demurrants. From this it is clear that there was no reason why they should have been required to answer the bills.

In *Pearce* v. *Creswick,* 2 Hare 286, Vice Chancellor Wigram, an eminent authority on the subject of discovery, said: "The necessity a party may be under, from the very nature of a given transaction, to come into equity for discovery, is a circumstance

to be regarded in deciding upon a distinct and independent question of equitable jurisdiction." It would be difficult to imagine a case in which the plaintiff's necessity for discovery could be greater than in this. Its bill shows that it had a contract for the use of a certain telephone line and that all these defendants were interested in that line and in the uncertain and undefined concern then existing under the name of the Kanawha Valley Telephone Company and that they all had knowledge of its affairs, and that the plaintiff has been deprived of the use of that line and that it has been disposed of to unknown parties and all information relating to it and to the persons composing the firm or corporation with which the plaintiff contracted is concealed. The Kanawha Valley Telephone Company, having been sued as a corporation, came forward and filed a plea denying that it is a corporation and that plea is verified by W. E. Mohler, one of the defendants, who swears that he is acquainted with the facts in regard to the formation and the business of the Kanawha Valley Telephone Company and that the facts and allegations contained in that plea are true, except so far as they are therein stated to be upon information. What are those facts? That plea sets forth but one fact and that is that defendant company is not a corporation. Affiant says he is acquainted with the facts in regard to the formation and business of the company. Is not that equivalent to swearing to the fact upon his personal knowledge? If he is not interested as alleged in the bill why should he come forward and verify that plea? The plea and affidavit are exhibited with the bill and made parts of it and are *prima facie* evidence of a confession of interest on the part of W. E. Mohler. J. Chas. Mohler is alleged to have signed the contract as secretary and treasurer of the Kanawha Valley Telephone Company. The plea denying the co-partnership is verified by his oath and he says under oath that he is acquainted with the facts in regard to the formation and business of the company. What is said in the other plea and affidavit is true of this. Thus two of the three individual defendants are shown to be not only in possession of the information desired but interested as alleged in the bill and they have already been sued at law in respect to that contract. This is a situation vastly different from what appears in *Dineley* v. *Dineley, Twells* v. *Coslen,* and *Opdyke* v. *Marbel.* In those cases parties who were defendants were called upon to show that cer-

tain other parties who were not defendants, whose names were unknown, who were not alleged to exist at all, in whom no interest was shown, were interested, how interested and who they were. They were what are sometimes called mere fishing bills, searching for information of the existence of which nothing was certainly known or alleged. Now take the cases of *Heathcote* v. *Fleete; Morse* v. *Buckworth, Orr* v. *Diaper* and *Moodalay* v. *Moreton* and see how vastly different they are from the other class. There it was shown that the plaintiffs in the bills had substantial rights and interests which had been invaded and interfered with to their injury and damage, that the defendants in those bills had the management and control of the agencies and means by which those wrongs had been inflicted, but that the plaintiffs did not know the names and residences of the persons who had done these wrongs and the court compelled those parties who were interested to the extent of controlling and managing, and who were possessed of the information to disclose it. This case seems clearly to fall within that principle, but it need not stand upon that. The plaintiff here has gone further and has actually brought its action at law against all these defendants and the vital question is raised formally by pleadings in that action as to whether these defendants contracted with the plaintiff and the plaintiff has made an appeal to their consciences for evidence on the trial of that issue.

It is argued in the brief of counsel for appellant that the hardship of the situation of the plaintiff here should have no weight in determining the question of jurisdiction for the reason that in entering into this contract with the Kanawha Valley Telephone Company without having first inquired and obtained knowledge whether it was a corporation or a co-partnership and, if a co-partnership, who the partners were it voluntarily put itself into an embarrassing situation from which it asks the court to relieve it. Upon this proposition appellants rely upon *Twells* v. *Costen* in which the court said: "It is not the function of courts to supply the defects in the terms of contracts which the want of prudence or forecast in the contractor has omitted; at all events they ought not to aid him to get out of a difficulty which a superior sagacity would have anticipated, by introducing a rule of law which might work general evil. The necessity in such a case seems a necessity arising from want of sufficient forecast in making a bargain; a necessity which if ad-

mitted to be sufficient to modify the positive rules of law and
equity in all cases would render these rules unworthy of the
name." This language must be read and considered in the
light of the facts of the case then under consideration which are
very different from the facts in this case. Moreover, the bill
in that case did not show that the plaintiff knew that the pur-
chaser was acting as an agent at the time he made the purchase.
It is only shown that at the time of the filing of the bill the
plaintiff knew or suspected that the purchaser so acted. In this
case it is shown that a corporation had been chartered under the
exact name which it is alleged these defendants adopted and
used in entering into the contract sued upon. The contract
was so signed, therefore, as to indicate that the man who af-
fixed the signature was only an officer of a corporation or an
agent of a co-partnership. Another distinction is that in *Twells*
v. *Costen* the plaintiff had taken an obligation for the payment
of money. Here the plaintiff had contracted for the use of
specific property which the Kanawha Valley Telephone Company,
whatever that concern was, has, in violation of its contract for
the use thereof, sold and disposed of and deprived the plaintiff
of its use. Assuming that the plaintiff, at the time the con-
tract was executed, regarded the Kanawha Valley Telephone
Company as a co-partnership, its name undoubtedly being cal-
culated to convey the impression that it was a co-partnership, if
not a corporation, the plaintiff had the right to rely upon the
principle that one co-partner can bind all the others by his con-
tract. The allegations of the bill showing that the defendants
have been sued as late partners and such of them as were in
fact co-partners of J. Chas. Mohler being bound by his con-
tract, evidence on that question of fact is as material as the
evidence upon any other question of fact arising in the action at
law. It is true, that under our procedure it becomes a prelim-
inary question, raised by a plea in abatement, but that does not
detract from its importance and vital character. In many of
the states that question is postponed until the final trial and is
raised under the general issue. 1 Enc. Pl & Pr. 13, citing *Rhoads*
v. *Booth,* 14 Iowa 575; *Gerry* v. *Gerry,* 11 Gray (Mass.) 382;
*Tate* v. *Citizen's Mut. F. Ins. Co.,* 13 Gray (Mass.) 79; *Glover*
v. *Hunnewell,* 6 Pick. (Mass.) 222; *Hill* v. *Davis,* 4 Mass. 137;
*Whiting* v. *Cook,* 8 Allen (Mass.) 63.

From these conclusions it results that there is no error in

the order appealed from. It must be affirmed and the cause remanded with leave to the defendants to answer the first three of the interrogatories propounded in the bill.

*Affirmed and Remanded.*