STATE ex rel. BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING CO., Relator, v. DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT et al., Respondents.

27  441
d28  450

27  441
30  213
30  216

27  441
e29  367
e29  369

(No. 1,909.)

(Submitted February 11, 1903.   Decided February 16, 1903.)

*Discovery—Books and Papers—Order for Inspection—Affidavits—Sufficiency—Certiorari—Review.*

1.  Constitution, Article III, Section 7, declares that the people shall be secure in their persons, papers and effects from unreasonable searches and seizures. Code of Civil Procedure, Section 1810, provides that any court in which an action is pending may order either party to give to the other an inspection of any document in his possession containing evidence relating to the merits of the action or defense. *Held,* that the court in which an action at law is pending has authority to make an order under Section 1810, the statute conferring on law courts authority inherent in courts of equity, and defining the circumstances under which an inspection of papers will not be deemed an unreasonable search.

2.  Where the affidavit in support of an application for an order for the examination of defendant's books and papers contained no statement that an action was pending in the court, and failed to apprise the court of the nature of the action and relief sought, the application could not be granted.

3.  An order for the examination of defendant's books and papers, containing no limitation on the time within which inspection shall be made, is void.

4.  Where the court makes an order for the examination of a defendant's books and papers without a proper showing, or makes an order which embraces the inspection of papers which, under the circumstances could contain no evidence relevant to the issue, or fails to limit the time within which the inspection should be made, it exceeds its jurisdiction, and *certiorari* will lie.

5. Plaintiff claimed that defendant had, by fraud and collusion, induced him to sell for a small consideration his interest in an option to purchase a mining claim, and had subsequently purchased the claim; and plaintiff sued to recover an interest therein. He obtained an order authorizing him to inspect all letterpress copy books of defendant containing any letters written by any of its officers to any other officer, for the purpose of ascertaining what letters there were relating to the claim and the acquisition. *Held,* that the order should have confined plaintiff to the inspection of such books as related to the purchase.

6. A provision in the order permitting an inspection of all letters written to defendant concerning the claim was too broad, as defendant could not be bound by statements in letters written to it by persons not connected with the transaction involved.

7. A provision in the order entitling the plaintiff to copies of maps of all workings made by the defendant in a certain year was too broad.

8. A provision in the order permitting an inspection of the stope sheets and stope books showing ore extracted from claims other than that in controversy was erroneous, plaintiff being entitled to an inspection of such books only to the extent that they showed ore extracted through the workings of such claims from the claim in controversy.

9. A provision in the order permitted inspection of all books of account showing transactions with the claim in controversy, and particularly such books as showed the amount and value of the ore extracted from it, and the expenditures made on account of it. *Held,* that the inspection should have been limited to particular accounts and items in the books which showed the facts mentioned, and should not subject defendant to have its books thrown open in their entirety.

10. For like reason a provision in the order authorizing inspection of all books showing the cash account and investment account of defendant for a certain year was erroneous.

11. A provision in the order authorizing an inspection of all books and records of the company which had owned the claim before defendant was erroneous, as the inspection should be limited to an examination of only those portions of the books which related to the option to the plaintiff or the sale of the claim to defendant.

*Certiorari* by the state, on relation of the Boston & Montana Consolidated Copper & Silver Mining Company, to compel the District Court of the Second Judicial District for the county of Silver Bow, and William Clancy, the judge thereof, to set aside an order made for an examination of books and papers of defendant in an action by Patrick Mullins against relator. Order annulled.

*Messrs. Forbis & Evans, Mr. A. J. Shores,* and *Mr. C. F. Kelly,* for Relator.

*Mr. T. J. Walsh,* and *Mr. C. R. Leonard,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In November, 1902, an action was commenced in the district court of Silver Bow county by one Patrick Mullins, plaintiff, against the Boston & Montana Consolidated Copper & Silver Mining Company, defendant, to recover a three-fourths interest in the Comanche mining claim. The plaintiff claims that in 1893 he had a lease and bond on such claim from the Comanche Mining Company, which then owned the claim, and that by the terms of such lease and bond he had the option to purchase such claim at any time within a year for $200,000; that he sold an undivided one-fourth interest in his lease and bond, and thereafter, within the year, was, by fraud and collusion on the part of this defendant, the Butte & Boston Mining Company, one J. A. Coram, and plaintiff's co-tenant in said claim, induced to sell for a small consideration the remaining three-fourths interest in said lease and bond, and that the defendant then became the successor to the Comanche Mining Company.

The complaint is lengthy, and assumes to set forth in detail the alleged acts of fraud and collusion, but the allegations set forth above are sufficient for the purpose of this decision. After the commencement of the action, plaintiff made an application for an order requiring defendant to permit plaintiff to examine and take copies of certain letters, letterpress copies of letters, maps, stope sheets, stope books, books of account, and the original lease and bond executed to the plaintiff by the Comanche Mining Company, all of which are claimed to be in the possession of the defendant. After notice, and upon hearing, the court made the order complained of. That order comprises nine sections or subdivisions and they are as follows:

"Ordered that the defendant herein produce for the inspection of the same by the plaintiff, and that it permit plaintiff to inspect the following:

"(1) All letterpress copy books of the Boston & Montana Consolidated Copper & Silver Mining Company containing any letters written by any of its officers from Butte, Montana, to the company or any of its officers or agents or J. A. Coram, between January 1, 1893, and August 30, 1893, but the right of the plaintiff to inspect such letterpress copy books shall extend no

farther than to ascertain what copies of letters there are therein relating to the Comanche mining claim, or the acquisition of any interest therein by the defendant company, and as to such letters a complete inspection thereof.

"(2)  All letters written to the company at Butte or to any of its officers or any of the officers of the Butte & Boston Mining Company concerning the Comanche mining claim, between January 1, 1893, and August 30, 1893.

"(3)  All maps of workings of the company made in the year 1893.

"(4)  All stope sheets and stope books showing ore extracted from the Comanche mining claim or the West Colusa or the Mountain View mining claim during the time from March 1, 1893, to August 10, 1893.

"(5)  All stope sheets and stope books showing ore extracted from the Comanche mining claim since August 10, 1893.

"(6)  All books of account showing transactions in connection with the Comanche mine, and particularly such books as show the amount and value of ore extracted from it, and expenditures made on account of it.

"(7)  All books showing the cash account and the investment account of the defendant company for the year 1893.

"(8)  All books and records of the Comanche Mining Company.

"(9)  The lease and bond executed by the Comanche Mining Company to the plaintiff, Patrick Mullins, of the Comanche mining claim in the year 1893.    *    *    *"

The relator thereupon made application to this court to have the order annulled.

Section 7, Article III, of the Constitution, provides, "The people shall be secure in their persons, papers, homes, and effects, from unreasonable searches and seizures," etc.    Section 1810 of the Code of Civil Procedure provides: "Any court in which an action is pending, or a judge thereof, may, upon notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy, of entries of accounts in any book, or of any document or paper

in his possession or under his control, containing evidence relating to the merits of the action, or the defense therein.  * * *"

It will be conceded that, in the absence of any statute, the district court, in the exercise of its inherent powers as a court of equity, could, upon a sufficient showing, make an order for discovery which would furnish plaintiff all the relief which he can obtain under Section 1810, above; that the legislative enactment added nothing to the power of the court as a court of equity, but, on the contrary, apparently sought to confer on law courts the authority long exercised by courts of equity independent of statutory authority; and, in addition thereto, gave to Section 7, Article III, of the Constitution, a legislative construction defining the circumstances under which the inspection of the private papers and documents of one party by another will not be deemed an unreasonable search.  We conclude, then, that the court—if an action was pending therein—had the authority, upon a sufficient showing, to make a proper order requiring the relator herein to permit the plaintiff, Mullins, to make inspection and copies of such entries of accounts, documents, or papers in its possession or under its control as contain evidence relating to the merits of his action or the defense therein.

Our first inquiry, then, is: Was a sufficient showing made? The affidavits filed in support of the application for the order complained of did not contain any statement that an action was pending in the court at the time such application was made. Under Section 1810, above, the order for inspection can only be obtained from a court *in which an action is pending,* or from a judge thereof; and in our view of the case this fact must affirmatively appear from the face of the verified petition or affidavits upon which the application is based.  We are further of the opinion that the application should, by express statement, or by apt reference to the pleadings on file, apprise the court of the nature of the action and the relief sought, in order that it may determine whether or not the evidence sought to be obtained by the inspection could, in any view of the case, be material or relevant to the issues.  For its failure to show these facts, we

consider the application insufficient to vest in the lower court authority to make any order of inspection.

If a sufficient showing had been made, the next inquiry is: Was the order made a proper order under the circumstances of this case, and within the purview of Section 1810, above? Under the terms of that section only such papers, documents, etc., can be subjected to this search as contain evidence relating to the merits of plaintiff's action or the defense therein. as disclosed by the affidavits filed upon which the application for the order was made. A summary of the claims contained in those affidavits is to the effect that certain letters passed between the officers and agents of the defendant company in Butte and its officers and agents and J. A. Coram and officers and agents of the Butte & Boston Mining Company in Boston, and that such letters contain statements relative to the acquisition of the Comanche mining claim, and, taken together, tend to show that such claim was acquired in the manner set forth in plaintiff's complaint; and that letterpress copies of such letters were kept. It is further alleged that the defendant made maps in 1893, which show the work done on the Comanche claim, and also show work done on that claim through workings of the West Colusa and Mountain View claims; and, further, that stope sheets and stope books were prepared and kept, which show the amount of ore taken from the Comanche mine and ore taken therefrom through workings on the West Colusa and Mountain View claims; and that defendant company kept and has books of account in which are kept the items of receipts and disbursements on account of each mine worked by it; and that it also has the books kept by the Comanche Mining Company, which show the transactions of that company with reference to its disposal of the Comanche claim. It is also claimed that the original lease and bond executed by the Comanche Mining Company to Mullins is in the possession of the defendant company. Upon this showing the district court made the order complained of.

Tested by the showing made and the provisions of Section 1810, above, we are of the opinion that the order made is alto-

gether too broad in its provisions, and is void, as containing no limitation on the time within which such inspection should be made, as required by Section 1810, above. What remedy, then, has the defendant company? According to our views, to the extent that the district court made its order without a proper showing, or, in the order made, embraced the inspection of any papers or documents which, under the terms of that section and the showing made in those affidavits, in the very nature of things could not contain evidence material or relevant to the issues; and in making an order for inspection without limiting the time within which such inspection should be made it exceeded its jurisdiction, and *certiorari* will lie to correct the error committed. In *St. Louis M. & M. Co.* v. *Montana Co.,* 9 Mont. 288, 23 Pac. 510, this court said, in speaking with reference to the provisions of the statute for an inspection of mining property: "The section of the Code under review does not empower any court or judge to grant an order that is fruitful of injustice or oppression. Whenever this is done, such action will exceed the authority that has been bestowed, and can be rightfully set aside." The proceedings for the inspection of papers and documents are analogous to the proceeding to obtain an order for the inspection of mining property, and this court has held in *St. Louis M. & M. Co.* v. *Montana Co.,* above, that *certiorari* will properly lie to correct an error made in improperly granting an inspection order in that case. In this, however, we are to be understood as speaking with reference to the particular facts of this case, as the technical record was all the district court had before it upon the application for the order complained of.

Section 1948 of the Code of Civil Procedure defines the extent of the remedy which may be had in this court: "When a full return has been made, the court or judge must hear the parties or such of them as may attend for that purpose, and may thereupon give judgment, either affirming or annulling or modifying the proceedings below." The plaintiff below should be confined strictly to the rights to which he is entitled upon the showing made, and under the provisions of Section 1810 above, and at the same time the defendant company should be secure

in the possession of its papers and effects against unreasonable searches.

Section 1 of the order complained of permits an inspection of all letterpress copy books of the Boston & Montana Company containing any letters written by any of its officers from Butte to the company or any of its officers, or J. A. Coram, between January 1, 1893, and August 30, 1893, for the purpose of ascertaining what copies of letters there are therein relating to the Comanche mining claim, or the acquisition of any interest therein by the defendant company. In our view of the case, this is altogether too much in the nature of a fishing expedition, and the order should have confined the plaintiff below to an inspection of such copies of letters in such letterpress copy books only as relate to the purchase of the Comanche mining claim, or the acquisition of any interest therein by the defendant company, and should not have permitted an inspection of all of the letterpress copies, in order to ascertain what letters there are therein of which copies are sought.

Section 2 permits an inspection of all letters written to the company at Butte, or to any of its officers, or to the officers of the Butte & Boston Mining Company concerning the Comanche mining claim between January 1, 1893, and August 30, 1893. Written to them by whom? Manifestly by any person, whether an officer or agent of those companies or of either of them, or by an entire stranger. Certainly it could not be said that the Boston & Montana Company should be bound by any statements contained in letters written to any of its officers or agents, or to the officers or agents of the Butte & Boston Company by disinterested third parties. The affidavits fail to show wherein any of such letters could be material under any circumstances.

Section 3 permits an inspection of all maps of workings of the company made in the year 1893. We cannot understand how this could be permitted under any view of the case. Perhaps the plaintiff below would be entitled to copies of maps made in 1893 of the Comanche mining claim, or of any portion or portions thereof; but certainly he could not be entitled to copies of maps made by the Boston & Montana Company of

workings in some other claim in no wise connected with the controversy between these parties.

Section 4 permits an inspection of stope sheets and stope books showing ore extracted from the West Colusa and the Mountain View claims during the time from March 1, 1893, to August 10, 1893. If the stope sheets and stope books of those claims, or of either of them, show any ore extracted through the workings of those claims, or either of them, from the Comanche claim, to the extent only that such stope sheets and stope books do show this fact is the plaintiff entitled to such copies.

Section 6 permits an inspection of all books of account showing transactions in connection with the Comanche mine, and particularly such books as show the amount and value of the ore extracted from it, and expenditures made on account of it. This inspection, we think, should be limited to particular accounts and items in those books which show the facts mentioned, and should not subject the defendant company to have such books themselves thrown open in their entirety to perusal by the plaintiff. And the same may be said of Section 7.

Section 8 permits an inspection of all books and records of the Comanche Mining Company. This company was in existence before the execution of the lease and bond to the plaintiff, Mullins, and the inspection should be limited to an examination of only those portions of the books and records as relate to the lease and bond to the plaintiff or the sale of the Comanche mine to the defendant company.

For the reasons herein set forth, the order of inspection made by the district court on the 17th day of January, 1893, is annulled and set aside.

*Annulled and set aside.*

MR. CHIEF JUSTICE BRANTLY (concurring): Whether the jurisdiction—that is, the power to hear and determine—invoked by the application to the district court is derived from the statute or is one of the inherent powers of a court of equity, a sufficient showing must be made by the affidavit or petition to put the

power in motion; otherwise the court is without power to make the order at all. And when the application is sufficient to support an order, yet, if the court in granting relief thereon, goes further in the order than is justified by the facts stated, this is excess of jurisdiction to the same extent, and the order so made is void *pro tanto.* To say, as the defendant does, that an order not justified by the record is an error within jurisdiction, and that this court has no power to grant relief by way of *certiorari* or any other writ, is equivalent to saying that a district court has power to override the constitutional rights of a citizen, and that there is no remedy for the wrong thus done. If this position is tenable, then it follows that, if that court should make an order upon an oral application not under oath, the aggrieved party would have no remedy. There is no appeal from the order itself, nor any other adequate remedy. An appeal from the judgment would furnish no relief whatever. The order will have been executed long before the judgment is rendered, and the wrong thus done in the invasion of the relator's rights will be beyond repair. Of course, the district court may decide wrong as well as right upon this kind of an application as well as upon any other, but its power to decide must first be invoked by a proper application. The only doubt I have is as to the remedy —whether this court should in this case interfere by *certiorari* or by its supervisory power. That it has power to grant the relief prayed for is beyond question. I am inclined to think that *certiorari* is the proper remedy, and hence concur.

MR. JUSTICE MILBURN: I concur with MR. JUSTICE HOLLOWAY in his opinion and in the conclusion reached by him. I also agree with the Chief Justice in his concurring opinion.