WINNESHIEK COUNTY STATE BANK, Plaintiff, v. DISTRICT COURT
OF ALLAMAKEE COUNTY et al., Defendants.

**CERTIORARI:** When Writ Lies—Review of Order Relative to Inter-
rogatories. The statute (Sec. 11185 *et seq.*, Code of 1924) relative to
the right to attach interrogatories to pleadings, and providing for
answers thereto by the adversary, simply creates a rule of evidence;
and an order which overrules objections to such interrogatories on the
naked ground of *irrelevancy, incompetency, and immateriality,* and
which requires the adversary to answer such interrogatories, is not
reviewable by certiorari.

EVANS, C. J., and DE GRAFF and MORLING, JJ., dissent, holding that
the order in question is oppressive, and that the writ was proper,
under the broad constitutional power of this court ''to secure justice
to parties.''

Headnote 1:  11 C. J. pp. 106, 195, 197; 18 C. J. p. 1102 (Anno.)

*Certiorari to Allamakee District Court.*—JAMES D. COONEY,
Judge.

FEBRUARY 15, 1927.

REHEARING DENIED JULY 1, 1927.

Certiorari to review certain orders of the district court.
The opinion states the case.—*Writ dismissed.*

*E. R. Acres,* for plaintiff.

*William S. Hart,* for defendants.

STEVENS, J.—This is an original certiorari proceeding in
this court to review certain rulings and orders by the district
court of Allamakee County, requiring and directing the plaintiff
herein, who is also the plaintiff in the action below, to answer
certain interrogatories attached to the answer of the defendants
therein. The plaintiff is a banking corporation, and has pending
in the district court of Allamakee County an action against
Sophia and Amos W. Nagel upon two promissory notes for
$4,000 and $1,000, respectively, executed to it December 1, 1921.

The answer is lengthy, and with much detail and elaboration sets up fraud in the inception of the notes, together with a want of consideration. Attached thereto is a series of ten interrogatories which the plaintiff is asked to answer. The plaintiff, however, filed exceptions and objections to each of the said interrogatories, setting up that the testimony sought is immaterial, incompetent, and irrelevant. The petition filed in this court also alleges that the questions call for incompetent, immaterial, and irrelevant matter, and that:

"If plaintiff answers said interrogatories, he will suffer an irreparable injury, will be greatly prejudiced and hampered in the prosecution of his just cause against the said defendants, Sophia Nagel and Amos W. Nagel, on said note, and his right of action will be seriously hampered and impaired."

Neither the exceptions nor the objections to the interrogatories nor the allegations of the petition proceed upon the theory that any of the matters called for are privileged, or that they will necessarily require disclosures that will work serious or irreparable injury to the plaintiff. This proceeding was instituted prior to the date fixed by the court below for the filing of answers to the interrogatories; hence, no judgment has been entered.

The right of the plaintiff, which is denied by the defendants, to have the rulings complained of reviewed in this proceeding is the only matter requiring decision.

The right to file interrogatories at the time of filing a pleading is purely statutory, and the procedure to be followed is controlled thereby. The statute provides that either party may annex to his petition, answer, or reply written interrogatories to any one or more of his adversaries "concerning any of the material facts in issue in the action, the answer to which, on oath, may be read by either party as a deposition between the party interrogating and the party answering." The party answering need not confine his answers to responding merely to the interrogatories, but may state any new matter concerning the action, which he may also read as a deposition. The interrogatories must be answered at the time the pleading to which they are attached is answered or replied to, unless exceptions are filed thereto, in which event the court must determine the propriety of the interrogatories, and which, if any of them, shall be answered, and fix

a time therefor. The party answering shall distinguish clearly between what is stated upon his personal knowledge and what from information or belief merely. The answers must be verified by the affidavit of the party making them, to the effect that the statements therein made are of his own personal knowledge, and that they are true, or that they are made from information of others, and that he believes the same to be true. When the party interrogated is a corporation, the answers and verification thereof shall be made by the officer or agent of such corporation having knowledge thereof. Trial of an action by ordinary proceedings shall not be postponed because of the failure to answer interrogatories if the party interrogated is present at the time of the trial, so that he may be orally examined; nor shall such trial be postponed if the party whose duty it is to answer the interrogatories is absent, unless an affidavit reciting the facts which the interrogator believes will be proved by the answers, and that such interrogatories have not been filed for the purpose of delay, is filed. If, however, it be admitted by the party interrogated that the facts stated in the affidavit are true, the trial shall not be postponed. Sections 11185 to 11190, inclusive, Code of 1924. The further material provisions of the statute are as follows:

"Sec. 11191. Where a party filing interrogatories shall also file an affidavit that he verily believes the subject of the interrogatories, or any of them, is in the personal knowledge of the opposite party, and that his answers thereto, if truly made from such knowledge, will sustain the claim or defense, or any part thereof, and the opposite party shall fail to answer the same within the time allowed therefor, or by the court extended, the claim or defense, or the part thereof, according to such affidavit, shall be deemed to be sustained, and judgment given accordingly.

"Sec. 11192. The court may compel answers to interrogatories by process of contempt, and may, on the failure of the party to answer them, after reasonable time allowed therefor, dismiss the petition, or strike the pleading of the party so failing from the files."

No affidavit, as allowed by Section 11191, was filed by the defendants Sophia and Amos W. Nagel.

Did the court, in its rulings upon the exceptions and objections to the interrogatories, and in ordering that same be an-

swered, exceed "his proper jurisdiction" or otherwise act illegally? If so, the same may be reviewed in this proceeding, but not otherwise. The foregoing provisions of the statute have sometimes been referred to as substituting the proceeding therein authorized for the common-law bill of discovery. *Beem v. Farrell*, 135 Iowa 670. This decision apparently proceeded upon an erroneous interpretation of Section 3604 of the Code of 1897. The equitable action to obtain a bill of discovery was long since abrogated by statute in this state, except as to certain definitely prescribed matters. The decision in the *Beem* case also overlooks numerous prior decisions of this court.

Commencing with *Lane v. Krekle*, 22 Iowa 399, it has always been held that the statute creates a rule of evidence, together with a summary method by which one party may obtain the testimony of his adversary. *Perry v. Heighton*, 26 Iowa 451; *Greene, Rowley & Co. v. Woods*, 34 Iowa 573; *McFarland v. City of Muscatine*, 98 Iowa 199; *Independent Sch. Dist. v. Independent Sch. Dist.*, 148 Iowa 154. The answers to the interrogatories when filed may be read as a deposition by either party. Such is the plain provision of Section 11185 of the Code. The necessary corollary to the rule stated is the further rule that the interrogatories must relate to matters relevant and material to some issue in the case and competent to be introduced as evidence upon the trial. *Greene, Rowley & Co. v. Woods*, supra; *McFarland v. City of Muscatine*, supra; *Free v. Western Union Tel. Co.*, 135 Iowa 69; *Theis v. Chicago & N. W. R. Co.*, 107 Iowa 522, 525; *Red P. Cattle Club v. Red P. Cattle Club*, 108 Iowa 105; *Lee v. Blumer*, 189 Iowa 1145.

That the statute was designed to provide merely a rule of evidence and a summary proceeding to obtain the same is further emphasized and illustrated by the application made thereof in numerous decisions of this court,—in fact, in all of them touching the subject. *Perry v. Heighton*, supra; *Hogaboom v. Price*, 53 Iowa 703; *Beacham v. Gurney*, 91 Iowa 621; *Sully v. Wilson*, 44 Iowa 394; *Modern Steel Struct. Co. v. Van Buren County*, 126 Iowa 606; *Free v. Western Union Tel Co.*, supra; *Independent Sch. Dist. v. Independent Sch. Dist.*, 148 Iowa 154; *Baldwin & Co. v. Moser*, 155 Iowa 410; *Fahey v. Ancient O. U. W.*, 187 Iowa 825.

The rule does not appear to have ever been permitted to

operate oppressively or without due regard to the rights of litigants. Some discretion must, of course, be allowed to the court below in determining the propriety of the interrogatories, and perhaps some liberality indulged in favor thereof; but the materiality of the evidence sought, its relevancy to the issues to which the interrogatories relate, and the admissibility of the answers in evidence are necessarily the determining factors in ruling upon exceptions or objections thereto.

The court was bound to recognize and follow the statute which required him to determine the propriety of the interrogatories and whether the exceptions and objections thereto should be sustained or overruled. Surely, its jurisdiction was not exceeded when plaintiff's objections to the interrogatories were overruled. The most that could be urged against such ruling is that it was erroneous. The court having jurisdiction to overrule the objections, it is difficult to conceive how its order requiring and directing the plaintiff to answer the interrogatories, the propriety of which had already been determined, could be illegal in such sense as to permit a review thereof in this proceeding.

This is the first time review of a similar ruling has been sought on certiorari. Questions involving the statute often considered and passed upon by this court have always arisen upon appeal. Rulings upon the admissibility of evidence during the progress of a trial are mere incidents thereof, and reviewable neither upon direct appeal nor by certiorari. Error therein inheres in the judgment. *Richards v. Burden,* 31 Iowa 305; *State v. Arns,* 72 Iowa 555; *Northwestern Trad. Co. v. Western L. S. Ins. Co.,* 180 Iowa 878. The interrogated party may always show good cause for not answering the interrogatories, and it may be assumed that the court will not compel answers to be made of privileged matters or that may involve disclosures not proper to be made and not material or relevant to any issue in the case. In passing upon the objections, ordinary rules of evidence are to be applied.

There is not in the entire record, including the brief and argument of counsel for plaintiff, a suggestion of any other ground of exception or objection to the interrogatories than that they are incompetent, immaterial, and irrelevant. The brief and argument proceed wholly upon the theory of the objections urged, with the single addition that the ruling of the court was

arbitrary and that the interrogatories are in the nature of a "fishing expedition." The statute having conferred specific authority upon the court to determine the propriety of the interrogatories and to rule upon objections and exceptions thereto, the most that can be urged is that the ruling was erroneous. The term "illegal" means something different from "erroneous," and, while a thing may be both erroneous and illegal, it is by no means necessarily illegal because erroneous. *Ryan v. Hutchinson,* 161 Iowa 575; *Iowa Loan & Tr. Co. v. District Court,* 149 Iowa 66.

We said in *Witmer v. District Court,* 155 Iowa 244, that:
"* * * the general proposition that an erroneous ruling of a court in a proceeding of which it has jurisdiction cannot be reviewed on certiorari has so often been announced that further citation of authorities would not be justified."

We conclude, therefore, that certiorari is not the proper method to review the ruling and order of the court upon the admissibility of the evidence sought, or the order directing plaintiff to answer the interrogatories.

Sections 11316 to 11318, inclusive, Code of 1924, prescribe a method for compelling the production of books and papers upon the petition of one party to an action, somewhat analogous to the summary method we have been discussing of procuring testimony of one party by an adversary. We refer to the latter provisions of the statute for the reason that a writ of certiorari to review the ruling and order of the court directing the production of books and papers has been frequently sustained by this court. These separate provisions of the statute were designed to accomplish wholly different purposes, although both relate to summary methods of procuring evidence. If one party to an action desires the other party to produce books or papers which he believes are in his possession and under his control, such party may file a separate petition, duly verified, alleging the matters required by Section 11317, Code of 1924. The real purpose of the above statute is to provide for the examination of books and papers which may be admissible in evidence, which, without such order, are not available to the petitioner.

Construing the statutes last cited, we held, in *Dalton v. District Court,* 164 Iowa 187, that the review sought involved, in

effect, only a ruling upon the admissibility of evidence, and denied the writ.

In *Finn v. District Court*, 145 Iowa 157, we held that the court has inherent power to compel witnesses to answer questions on cross-examination in a proceeding to take depositions. In that case, it was suggested that perhaps the plaintiff might refuse to obey the order of the court, subject himself to a possible proceeding for contempt, and have the matter reviewed by this court on certiorari. The question was not involved, and the remark of the court amounted to nothing more than a mere suggestion. The right of review by certiorari was denied in *Iowa Loan & Tr. Co. v. District Court*, supra, but by a divided court. The opinion in this case emphasized the discretion of the trial court in the matter considered, as the reason for the conclusion reached. The writ has, however, in numerous later cases involving orders for the production of books and papers been sustained as a method of review. *Grand Lodge of A. O. U. W. v. District Court*, 150 Iowa 398; *Davis v. District Court*, 195 Iowa 688; *Hemmings v. Home Mut. Ins. Assn.*, 199 Iowa 1311; *Coyle v. Sawyer*, 198 Iowa 1022; *Travelers Ins. Co. v. Jackson*, 201 Iowa 43.

Reasons distinguishing the two lines of decisions are manifest and obvious. Under the former statutes, the court may, upon the failure or refusal of the party required to answer to do so, dismiss the petition or strike the pleading and enter judgment accordingly. From such order of dismissal and judgment the defeated party may appeal. The remedy in such case is adequate and complete. We have said in several decisions involving the latter statute that, if the order requiring the production of books and papers is complied with, the error in the ruling, if any, will not be reviewed. No judgment from which an appeal may be taken can be entered in a proceeding for the production of books and papers. It is independent of the main action, and in a sense auxiliary thereto. The order requiring the production thereof is final, and, if challenged at all, to avail anything it must be before compliance is made therewith. Certiorari is the only remedy, therefore, by which it can be reviewed. The order in such case, to be reviewable on certiorari, must amount to something more than a mere ruling upon the admissibility of evidence or the production of books and papers necessary and

proper for the examination of the petition. In other words, it must appear that the court has acted without jurisdiction or otherwise illegally, within the meaning of Section 12456, Code of 1924, and not merely erroneously.

The ruling complained of in this case amounted to nothing more than the overruling of objections to the admissibility of evidence,—indeed, the objections contemplated nothing more,— and is not, for the reasons already pointed out, therefore, reviewable on certiorari. Manifestly, if the court sought to compel obedience to its order complained of in this case by contempt, the remedy by certiorari to review the legality of such order would be available to plaintiff. In all other particulars, the right of appeal would be adequate.—*Writ dismissed.*

FAVILLE, VERMILION, and ALBERT, JJ., concur.

MORLING, J. (dissenting).—I respectfully dissent. If I could look upon the majority opinion as merely settling a question of practice, I would not burden the court and the profession with a dissent.

In the first place, I cannot reconcile the majority opinion with *Davis v. District Court*, 195 Iowa 688, in which certiorari to test the validity of an order for the production of documentary evidence was sustained. It is true that the point made there was that the books and papers desired were not sufficiently identified, nor their materiality shown. It is there said that the defendant should not be required to produce for the inspection of a petitioner immaterial evidence or documents inadmissible upon proper objection. It is also said:

"If, however, the order goes beyond the discretion and authority of the court, and thereby becomes illegal or the court exceeds its jurisdiction, it is subject to review by certiorari."

The opinion sustained the writ of certiorari, and modified the order of the lower court. It is incorrect, I think, to say that the district court was without jurisdiction or was acting illegally. The district court is a constitutional court of general jurisdiction. The parties were before the court, and the court had jurisdiction of the subject-matter. It was invested with full jurisdiction of both. It had power to determine whether the petition for production of documents should be granted. Its jurisdiction did not depend upon the correctness of its decision. Jurisdiction

necessarily. includes the power to decide wrongly, as well as rightly. Ex parte Moran, 75 C. C. A. 396 (144 Fed. 594), and cases cited in 15 Corpus Juris 723 et seq.; 4 Words & Phrases 3876 to 3882; 2 Idem (2d Series) 1276 to 1278. Its decision, if wrong, was erroneous, and should be corrected by appeal, if remedy by appeal were provided. Arnold v. Schmidt, 155 Wis. 55 (143 N. W. 1055); Herron v. Dater, 120 U. S. 464; Ex parte Parks, 93 U. S. 18. If, as in that case and this, no remedy by appeal is provided, then justice must be secured through the exercise of the constitutional duty of this court, which will be later referred to. It is a principle of our system of jurisprudence that the same remedies shall be meted out to all suitors who approach the court under substantially the same state of facts. Otherwise, there would be discrimination between suitors, and equal protection of the law and equality between citizens would be denied. An erroneous rule may be adopted, and, if so, it is not beyond the power of the courts, under proper conditions, to correct it. 7 Ruling Case Law 1008. The reasons given for the decision may be unsound, and still the result be entirely right, and one to be adhered to. I think the result of the Davis case is right, on principle and authority, and that the question is stare decisis. Lemp v. Hastings, 4 G. Greene 448; State v. Silvers, 82 Iowa 714. It seems to me that, if the order in the Davis case was illegal or in excess of jurisdiction, the one under consideration here is as clearly so. The holding in the Davis case that the order was beyond the power of the court to make has support in the authorities, although, as suggested,. I think it is more proper to say that the court erred, rather than that it acted in excess of jurisdiction.

In St. Louis M. & M. Co. v. Montana Co., 9 Mont. 288 (23 Pac. 510, 515), it is said, concerning a statute permitting an inspection and survey of a mining property, that it "does not empower any court or judge to grant an order that is fruitful of injustice or oppression. Whenever this is done, such action will exceed the authority that has been bestowed, and can be rightfully set aside. * * * The statute does not provide for an appeal from the order, which has been reviewed, and the writ of certiorari has been properly issued * * *."

This case was followed in one involving the validity of an order for inspection of documents, State ex rel. B. & M. C. C. &

*S. M. Co. v. District Court,* 27 Mont. 441 (71 Pac. 602, 94 Am. St. 831) ; also in *Cully v. Northern Pac. R. Co.,* 35 Wash. 241 (77 Pac. 202), cited in the *Davis* case. In *Evans v. Seaboard Air Line R. Co.,* 167 N. C. 415 (83 S. E. 617), cited in the *Davis* case, it is said:

"If the paper-writing sought to be produced is not of a kind which is pertinent to the issue, the court has no power to order its production."

I cannot agree with the statement of the majority opinion that the statute "was designed to provide merely a rule of evidence and a summary proceeding to obtain the same," or that our decisions cited sustain that proposition. Similar language is found in several of them. They go back to Judge Dillon's opinion in *Lane v. Krekle,* 22 Iowa 399, 407, in which, speaking to the question whether a pleading might be aided by interrogatories, he says, referring to Section 2985 *et seq.,* Revision of 1860:

"But this is only a special mode of procuring evidence; when elicited, it is provided that it 'may be read by either party as a deposition.' "

Judge Cole in *Perry v. Heighton,* 26 Iowa 451, 453, says, in reference to these sections, that, when they and those relating to interrogatories are construed together, they establish a rule of evidence, and that the interrogatories unanswered and the affidavit constitute proof of the claim or defense. These and the other cases cited I think fall far short of holding that Section 11192, Code of 1924, authorizing the court, on failure to answer, to dismiss the petition or strike the pleading, without providing any remedy by appeal or otherwise from an arbitrary and oppressive order which may result, creates "merely a rule of evidence." The cognate sections do provide a rule of evidence. When the interrogatories are answered, the answers may be read as a deposition. When they are not answered, failure to answer may be utilized as evidence. I think no opinion can be found that Section 11192 provides merely a rule of evidence. It provides for a summary judgment, severe ultimate relief. The party to whom the interrogatories are propounded, in not answering, if he may not resort to the writ of certiorari, is given no alternative but to accept the most severe penal consequences, for which

the remedy by later appeal is wholly uncertain and inadequate. This subject will be developed later.

But the most serious matter, as I view the case, is that the majority opinion assumes that the legislature is the fountain of justice and charged with its administration.  To do justice is an essential attribute of sovereignty.  The sovereign power has by the Constitution delegated that part of its prerogative, not to the legislature, but to this court.  Though the constitutional provision, which will be later referred to, is not mandatory in its terminology, nevertheless justice, the public good, and the rights and interests of the public are concerned.  The power is granted for their benefit.  Its exercise may be, as I think it is in this case, necessary, to secure justice.  Under such circumstances, the court has no discretion.  It is under a mandatory duty to put forth its power, and it has no right to abdicate that duty in deference to legislative usurpation.  See cases cited in 5 Words & Phrases 4420 *et seq.*  The legislature is without power to deny justice or to enact a statute to limit this court in the exercise of its constitutional duty to secure justice.  It is the constitutional function of this court to issue a writ of certiorari or its equivalent when justice requires it.  *State v. Supreme Court,* 95 Wash. 258 (163 Pac. 765) ; *Rice v. Board of Canvassers* (R. I.), 111 Atl. 748; *Mayor of Medford v. Judge of First District Court,* 249 Mass. 465 (144 N. E. 397) ; *Swan v. Justices of the Superior Court,* 222 Mass. 542 (111 N. E. 386 ; Note in 12 Am. Dec. 534; *Providence Theatre Co. v. District Court,* 38 R. I. 12 (94 Atl. 865) ; *Fainardi v. Dunn,* 46 R. I. 344 (128 Atl. 207) ; *Hartranft v. Mullowny,* 247 U. S. 295, 299 (62 L. Ed. 1123) ; *In re Arbitration between Carroll Hardwood Lbr. Co. and Kentucky R. Hardwood Co.,* 94 W. Va. 392 (119 S. E. 162, 164) ; *Ashworth v. Hatcher,* 98 W. Va. 323 (128 S. E. 93), and cases post.  I will take up this subject more in detail later.

That the oppressiveness of the order in question may be understood, I set out the first, second, eighth, and ninth interrogatories, which are as follows:

"Int. 1.  State the name of the party answering and making oath to these interrogatories on behalf of plaintiff, and what is and has been the employment or connection of such person with plaintiff, and for what period of time has it existed or continued; and state fully and in detail the personal transaction and the

personal knowledge of such person answering these interrogatories, of transaction of plaintiff bank with Adams Seed Company, W. C. Adams, and B. H. Adams, and one Boyers, one Therkildson, and one Mass, connected with Adams Seed Company, for and on behalf of plaintiff.

"Int. 2. To what extent has plaintiff bank, directly or indirectly, at any time, acquired notes, acceptance, or other written obligations of third parties from the Adams Seed Company or any of the individuals named in Interrogatory 1? Set out a full and complete detailed and itemized list and schedule of same, showing in each particular instance the date of the instrument or obligation, the amount thereof, name of each maker and of each indorser, the name of payee, rate of interest, date acquired by plaintiff, and amount and manner of payment thereof in each instance; such schedule or list to include all of such obligations at any time acquired by plaintiff from Adams Seed Company or any copartnership, association, or corporation to which it succeeded or from which it was reorganized.

"Int. 8. State the facts fully and in detail, confirming [confining?] your answer to facts, as distinguished from mere conclusions, as to what collateral, mortgage, pledges, or other security plaintiff has any time taken and received from the parties named and designated in Interrogatories 1 and 2, and state fully and in detail the disposition or use made of same, and state to what extent same is now held by plaintiff. A schedule or list setting forth fully the foregoing required information will be accepted as an answer to this interrogatory.

"Int. 9. State fully and in detail, giving the facts, as distinguished from mere conclusions, what indebtedness the plaintiff now holds or has held at any time in the past, against the parties or any of them named and designated in Interrogatories 1 and 2. Fully schedule and list such different items of indebtedness and the disposition and payment thereof, if paid, and the security, if any, required therefor."

The ruling on Interrogatory 5, I think, under the concession of counsel, ought not to be disturbed. The court, unconditionally ordered plaintiff to answer Interrogatories 1, 5, and 8, and ordered plaintiff to answer the others so far as they relate to transactions prior to December 1, 1921. As the case stands, therefore, the plaintiff is required to answer the interrogatories

without any anterior limitation of time. The plaintiff is required to detail the personal transactions and personal knowledge, not only of itself, but of the individual who answers the interrogatories, with the Adams Seed Company and some five individuals, without regard to any possible relevancy to the controversy in court, and for all time prior to December 1, 1921. It is required to completely detail and itemize this business, to set out names of indorsers, amounts, and manner of payment, and to extend the list to any copartnership, association, or corporation to which the Adams Seed Company succeeded. The plaintiff is required to detail all security which has been held for any such indebtedness. Not only might such a task, in the case of a large bank and of long standing business connections with the parties named, be almost impossible of performance, but its performance might make a part of the public records business transactions wholly irrelevant to the controversy in court, and not only of the parties to the controversy, but of those who are not concerned in it. Relevancy is not shown. The plaintiff is required to divulge, not only its own business, but the business of its patrons and the personal business of the individuals answering the interrogatories. It must reveal the details of the securities which have been taken by the plaintiff and the individual officer from the parties named throughout the whole past. The mere discounting of notes does not, of itself, have any tendency to prove fraud or knowledge of fraud. I think we have no right to assume, especially under present disturbed conditions, that any community or institution is invulnerable to disastrous results from unfounded rumors and partial and prejudicial disclosures of private affairs. The case calls for the application of a rule applicable to all institutions and to all communities and all occasions. When the danger arises, it may be suicidal to raise the question. Many patrons of banks necessarily do a vast amount of discounting, which, segregated from its other business and detailed before the public gaze, would create inferences and give rise to rumors fatal to their business, and, in times of financial disturbance such as we have been passing through, fatal to the bank. The fatality of the bank is the fatality of its depositors, not merely of the rich, but of the poor. The state is strewn with wreckage from business failures resulting from loss of confidence, and loss of confidence results

to strong and solvent institutions from partial disclosures and unfounded rumors.

It has been well said, with respect to bills for discovery, in *Hurricane Tel. Co. v. Mohler*, 51 W. Va. 1 (41 S. E. 421), quoting from Fonblanque's Equity, Book 6, Chapter 3, Section 1:

"But, as the most valuable institutions are not exempt from abuse, this power, which ought to be the instrument of justice, may be rendered the instrument of oppression. A plaintiff by his bill may, without the least foundation, impute to the defendant the foulest frauds, or seek a discovery of transactions in which he has no real concern; and when the defendant has put in his answer denying the frauds or disclosing transactions (the disclosure of which may materially prejudice his interest), the plaintiff may dismiss, with costs, satisfied with the mischief he may have occasioned by the publicity of his charge, or with the advantage which he may have obtained by an extorted disclosure. * * * The court alone can counteract it, and in vindication of its process, must feel the strongest inclination to interpose its authority."

Bills of discovery were, with an exception immaterial here, abolished by the Revision of 1860. (Section 4127.) The revision provided a remedy different in form and more expeditious, but in practical results, and largely in procedure, the same,— that of annexing interrogatories. (Section 2985 *et seq.*) These sections have come down to this day. Code of 1924, Sections 10953, 11185 *et seq.* Without taking space to elaborate and compare the practice and admissibility of the answers on bill of discovery and on statutory interrogatories, I may simply say that this court, I think, was correct in saying, in *Beem v. Farrell*, 135 Iowa 670, 672, that the statutory provision is practically a substitute for the equitable bill of discovery. 1 Pomeroy's Equity Jurisprudence, Sections 208, 209; 18 Corpus Juris 1076, 1078, 1102; 2 Story's Equity Jurisprudence (13th Ed.), Section 1480 *et seq.*, Section 1528 *et seq.*; Story's Equity Pleadings (8th Ed.), Section 311 *et seq.*; *Cully v. Northern Pac. R. Co.*, 35 Wash. 241 (77 Pac. 202).

Abuses such as referred to by Fonblanque and such as would result from the practice resorted to by the defendant in this case are not left for correction to such remedial process as the legis-

lature may prescribe, regardless of whether it may chance to be plain, speedy, and adequate. By the Constitution this court has ''power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior judicial tribunals throughout the state.'' Constitution of Iowa, Article 5, Section 4. The power is twofold: (a) To issue all writs necessary to secure justice to parties, and (b) to exercise supervisory control over all inferior judicial tribunals. Such power is granted in general terms, and among other things is intended as a safeguard against arbitrary action and error otherwise irremediable. It is over the inferior tribunal, and not merely over the cause of action or defense of the parties, that this court may exercise its supervisory control. The power is to issue all writs and processes necessary to the attainment of the contemplated end. Neither the power nor the writs through which it may be exercised were novel when the Constitution was adopted.

''For it is the peculiar business of the court of king's bench to superintend all inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the crown or legislature have invested them: and this not only by restraining their excesses, but also by quickening their negligence and obviating their denial of justice.'' 3 Blackstone's Commentaries *110.

The Constitution neither defines nor limits the writs which it empowers this court to issue, but makes the power to issue them as wide as the necessity of securing justice to parties requires. *Attorney General v. Chicago & N. W. R. Co.*, 35 Wis. 425; *State ex rel. Fourth Nat. Bank v. Johnson*, 103 Wis. 591 (79 N. W. 1081); *State ex rel. Bayha v. Philips*, 97 Mo. 331 (10 S. W. 855, 3 L. R. A. 476). The writ of certiorari at the time of the adoption of the Constitution was a well-known common-law writ; and while, as suggested by Chief Justice Ryan in *Attorney General v. Chicago & N. W. R. Co.*, 35 Wis. 425, the court may have power to devise new writs, I have no doubt that the court has inherent power to adopt this particular writ and to adapt it to the exercise of its supervisory control. No act of the legislature can impair or abridge the constitutional powers of the court or hamper the court in the use of such writs as the execution of those powers may require. Idem; *Tennessee Cent. R. Co.*

*v. Campbell,* 109 Tenn. 640 (75 S. W. 1012) ; *Green v. Heritage,* 64 N. J. Law 567 (46 Atl. 634) ; *State ex rel. Ruppel v. Wiethaupt,* 254 Mo. 319 (162 S. W. 163) ; *Degge v. Hitchcock,* 229 U. S. 162 (57 L. Ed. 1135) ; *In re Thompson,* 85 N. J. Eq. 221 (96 Atl. 102). See, also, *Flanigan v. Guggenheim Smelt. Co.,* 63 N. J. Law 647 (44 Atl. 763) ; *Redmond v. Quincy, O. & K. C. R. Co.,* 225 Mo. 721 (126 S. W. 159) ; *Lyons v. City of Bayonne,* 101 N. J. Law 455 (130 Atl. 14).

The statute regulating the remedy of certiorari (Section 12456 *et seq.,* Code of 1924) must be construed in harmony with the constitutional jurisdiction of the court. *Home Sav. & Tr. Co. v. District Court,* 121 Iowa 1, 9; *Manning v. Poling,* 114 Iowa 20. The language of this statute has undergone some modifications since its first appearance in Section 1965 *et seq.,* Code of 1851; Revision of 1860, Section 3487; Code of 1873, Section 3216; Code of 1897, Section 4154. It is made applicable to courts generally, and not specially to this court. I think the purpose of the enactment was merely to express the principles governing the allowance of the writ as generally recognized by the courts, and not to deny it in cases within the constitutional delegation of authority to this court. The general rule is that the writ will not issue where there is another plain, speedy, and adequate remedy; but it is not sufficient merely that there be another remedy, unless it is "plain, speedy, and adequate." *Des Moines Union R. Co. v. Funk,* 185 Iowa 330; *Edgar v. Greer,* 14 Iowa 211; *State ex rel. Erdahl v. District Court,* 189 Iowa 1167, 1171. An adequate remedy has been said to be:

"* * * a remedy which is equally beneficial, speedy, and sufficient,—not merely a remedy which, at some time in the future, will bring about a revival of the judgment of the lower court complained of in the certiorari proceeding, but a remedy which will promptly relieve the petitioner from the injurious effects of that judgment and the acts of the inferior court or tribunal." *State ex rel. Hamilton v. Guinotte,* 156 Mo. 513, 527 (57 S. W. 281, 50 L. R. A. 787, 795).

The error complained of is in the order sought to be reviewed. It may not affect the final judgment. We have, in effect, held that there is no remedy on appeal from the final judgment. In *Hemmings v. Home Mut. Ins. Assn.,* 199 Iowa 1311, 1314, speaking through Mr. Justice Vermilion, we said:

"In so far as the order was erroneous, or beyond the authority of the court, in requiring the production of documents appellant should not have been required to produce, it had no effect to bring about the result reached in the case. Furthermore, such documents as were improperly required were produced, and, we assume, inspected by the appellee. The mischief has been done, and a reversal on that account and a new trial would not undo it. In the absence of a showing of some improper use of the documents erroneously ordered to be produced, and one which could be corrected on a retrial, a reversal would be of no avail to protect any rights of the appellant's that may have been violated by the order."

Furthermore, the plaintiff is the actor in the action pending, and the one which is seeking the remedy from the reviewing court. The defendant may very well be perfectly contented with merely obstructing the progress of the case and the plaintiff's right to relief. The order to answer, as it stands, is a finality. The record shows no reason to believe that the trial court would rescind or modify it in the further progress of the case. It is the end of the proceedings, so far as the command to answer is concerned. Further proceedings on the order, if taken, will be merely to determine the process to be adopted for enforcement. That the defendant would take such proceedings is at least doubtful. The plaintiff cannot proceed with its action unless it answers, and suffers the injustice which may result from so doing. Its only option is to answer the interrogatories or dismiss its petition. It is stalemated. The order is not appealable. *Cook & Wheeler v. Chicago, R. I. & P. R. Co.,* 75 Iowa 169; *Devier v. Economic Life Assn.,* 106 Iowa 682; *State Bank v. Beeks,* 119 Wash. 42 (204 Pac. 771). It may be suggested that the court, under a general or special rule, would, in time, on its own motion order the case prosecuted, dismissed, or stricken from the calendar. The suggestion that the plaintiff might appeal from such a judgment or order is a suggestion of the possibility of a remedy which is neither plain, certain, nor adequate, and certainly not speedy. Meantime, the plaintiff is indefinitely obstructed from prosecuting its case and securing a determination of the right to relief which it claims. Possibly, by reason of insolvency or of death, with the limitation for filing claims, this might be a permanent loss of remedy. I think it is no more cor-

rect to speak of the right to file interrogatories, secure answers, and offer them in evidence as "merely" a rule of evidence than it would be to so speak of a bill of discovery, in the absence of statute. The statute may be made use of, as I think it has been here, as an instrument of oppression. The interrogatories may be filed merely for the purpose of fishing, and without any expectation of making use of the answers. They may be filed merely for the purpose of making a resort to the court for a recovery upon a legitimate cause of action abhorrent. It is no answer in this case to say that "the interrogatories must relate to matters relevant and material to some issue in the case, and competent to be introduced as evidence upon the trial," or that the court must determine their propriety, or that "the rule does not appear to have ever been permitted to operate oppressively or without due regard to the rights of litigants." It is a condition, and not a mere theory, that confronts this plaintiff. The district court has, in my judgment, abused its discretion, and has made an order that is oppressive, and that may, if certiorari is denied, result in irreparable injury, not only to the plaintiff, but to those who are not interested in the controversy. I think the cases first cited are authority for this proposition. If the law were now as it was prior to the Revision of 1860, and the defendant had filed a bill purely for discovery, and it had been sustained to the extent to which these interrogatories have been sustained, I think the decree would have been erroneous, final, and appealable. *Hurricane Tel. Co. v. Mohler*, 51 W. Va. 1 (41 S. E. 421). The statute, in substituting interrogatories for bill of discovery (which, without doubt, is its effect), has provided no remedy by appeal. It therefore devolves, I think, upon the court to exercise its constitutional authority, and provide by certiorari a substitute for the remedy which the plaintiff would have had prior to the enactment of the statute, and which, it seems to me, is, beyond any controversy, necessary, to secure justice to the parties.

The suggestion that the court might have made a similar ruling on the trial of the case, the results of which the plaintiff could not avoid, either by appeal or by certiorari, and that, therefore, relief from the ruling under consideration should be denied, it seems to me is open to a number of answers. It is hardly conceivable that such interrogatories propounded to a

witness on the trial would be sustained and the necessary postponement of the trial allowed, to permit them to be answered. If such postponement were allowed, then the plaintiff would have the opportunity to bring the matter here by certiorari. *Witmer v. District Court,* 155 Iowa 244, seems to argue to the contrary. It should be limited to the facts then under review. The statement therein that the error can be reviewed on final appeal is answered by *Hemmings v. Home Mut. Ins. Assn.,* 199 Iowa 1311, 1314, above quoted. The intimation that the statute precludes intermediate review by certiorari is inconsistent with *Davis v. District Court,* 195 Iowa 688. The possibility that, in the urgency of a trial, errors may occur for which an immediate remedy is not practicable, and which will, therefore, be irremediable, is no reason why a remedy under different circumstances, where the urgency is not present, and the practical difficulties do not exist, should be denied. The witness on the stand may or may not be a party. If a party, and he is subpoenaed, and fails to appear and give testimony, the other party may have a continuance. Section 11336, Code of 1924. If this course were adopted, writ of certiorari would be practicable. Or, upon a showing that he could not have full personal knowledge of the transaction, the court may order his pleading taken as true. Section 11337, Code of 1924. The transaction referred to, therefore, must be an ultimate, issuable fact set forth in the pleading; not merely a roving, indefinite, and perhaps unfounded and prejudicial matter, claimed to be evidentiary merely. To say that the party may refuse to answer the interrogatories, subject himself to penalty for contempt, and then have the proceedings reviewed on certiorari, is to invite a litigant to contemptuous treatment of the trial court,—an invitation abhorrent to the sentiment of respect which courts are entitled to from all men, and particularly from the supervisory court, whose supreme duty it is to enforce respect for the law and for the courts. Such a suggestion is to say to the party that he is entitled to have the error reviewed on certiorari, but not immediately or directly; that he must first commit an offense, get sentenced to pay a fine, or to be committed to jail; and that through that process, under cover of reviewing the order in the contempt proceedings, he may have, by identically the same writ, a review of the order to answer interrogatories.

It seems to be thought that the objections to the interrogatories do not raise the questions debated. It may be remarked, in the first place, that the interests of those not parties to the litigation, who have no standing to object or to appeal, are concerned, and should be protected by the court. The objections are not as full as they might be. The objections to the various interrogatories, however, in addition to those of being immaterial, irrelevant, incompetent, and foreign to any issue, urge that no time is specified for the transactions; that they are prejudicial and fishing expeditions; that, as to one or other of them designated, they throw "no light on the transaction in any way, seem to be merely to confuse and pry into things with which the defendants have nothing whatever to do," and "tending to confuse the fact and the issues." In the petition for the writ it is said that, if plaintiff answers the interrogatories, it will suffer an irreparable injury, will be greatly hampered in the prosecution of its just cause against the defendant, and its right of action will be seriously hampered and impaired. Taken together, and viewed in the light of the manifest prejudice into which the plaintiff and others may be precipitated by answering them, it seems to me that they should be held to raise the fundamental objections to them.

Of course, a merely discretionary order by the court, at least when discretion has not been abused, will not be reviewed on certiorari. The writ must be necessary to secure justice or to exercise the supervisory control of the court. The order under review seems to me to be a clear case of injustice. If the court declines to exercise its supervisory control and to issue the writ of certiorari when necessary to secure justice to parties, a constitutional right of the party's is denied to him. Dormancy in the exercise of constitutional power, rarity of circumstances calling for its exercise, cannot operate to repeal the power, and ought not to be permitted to be urged as a reason for denying the power when invoked. It is not for the court or litigants to make a dead letter out of any provision of the Constitution. It is not for the court by acquiescence in unconstitutional legislation to bind itself not to exercise its prerogative. The constitutional authority is very properly granted in general terms. It is neither for the court nor for the legislature to put a more definite limitation upon those terms. The application of the provi-

sion to any particular case should be left for determination when the case arises.

In my opinion, this case calls for the exercise of the constitutional power of the court by sustaining the writ.

EVANS, C. J., and DE GRAFF, J., join in the dissent.